[Filed March 17, 1886.]

## R. L. HAWTHORNE v. CITY OF EAST PORTLAND..

MUNICIPAL CORPORATION—CONSTRUCTION OF POWERS OF—STREET IMPROVEMENT—TAX.—A power conferred upon a municipal corporation to improve the streets and tax the cost thereof upon the adjacent property is a special and limited power, which can be exercised only by a strict observance of every requirement of the act confirming it.

SAME—NOTICE OF IMPROVEMENT.—The charter of East Portland provides that when a street is to be improved, the recorder must give a notice of the same "specifying with convenient certainty the street or part of street to be improved, and the kind of improvement to be made," and the published notice of a contemplated street improvement stated that the council proposed to improve a specified part of a street on which plaintiff's property abutted, by laying, "where the same may be required," a plank roadway of full width, with sidewalks, and it appeared that that part of said street had been once improved by the city and was in good condition when the latter improvement was proposed: *Held*, the notice was insufficient, in failing definitely to express the kind of improvement to be made.

SAME—ASSESSMENT—NAME OF OWNER.—So where the charter requires that in making an assessment for such an improvement the auditor shall enter in the docket of city liens the number or letter of the lot assessed, with its proportionate share of the cost, and the *name of the owner of the lot*, or that the owner is unknown; an entry under the head of "owner," of "J. C. Hawthorne, Est. of," when J. C. Hawthorne was dead at the time of the entry, is not a compliance with the charter.

SAME.—A provision in the charter that the auditor may take the certificate of the county clerk as to who is the owner of the property does not help such an entry, even though it appear from the records of the county at the date thereof that the owner of the property assessed was J. C. Hawthorne, and that he was deceased.

SAME.—A tax for street improvements is not against the person, but the property; and to render it valid, the act under which it is levied must be complied with in terms; when that is done, it becomes a legal charge

upon the property. The name of the owner, or that the owner is unknown, is inserted because the statute requires it.

SAME—CERTIFICATE OF COUNTY CLERK.—*Semble* that the charter authorizing the auditor to take the certificate of the county clerk as to the ownership of the lot, an assessment, if otherwise regular, would be valid if the auditor took such certificate and entered the name so certified in the docket of city liens, although it was not in fact the name of the true owner.

EQUITY—EQUITABLE ESTOPPEL.—When a party encourages the making of an improvement like the one in question, and from which he derives a benefit, upon the principles of equitable estoppel, he will not be allowed thereafter to question its legality. But this rule applies only where he has by some act consented to the improvement resulting in the assessment.

MULTNOMAH COUNTY.    Defendant appeals.    Affirmed.

*B. Killen* and *J. C. Moreland,* for Respondents.

*S. R. Harrington,* for Appellants.

THAYER, J.    This is a suit brought by the respondents against the appellants to enjoin the appellants from selling certain city lots owned by them in the said city of East Portland, by virtue of a street assessment which had been levied thereon for the improvement of L Street, in said city; the respondents claiming that the assessment was illegal, upon the grounds that the requirements of the city charter had not been complied with in the improvement of said street, and that it had before been improved, and by the provisions of the charter was not subject to be again improved.

The charter of said city points out the various steps required to be taken in such cases.    When any such improvement is to be made, the common council must cause the recorder to give notice of the same by publishing a notice for fourteen days previous to the undertaking, in some daily or weekly newspaper published in said city, or in the city of Portland, specifying with convenient certainty the street, or part of street, proposed to be

improved, and the kind of improvement to be made. Within ten days after the final publication of such notice, the owners of a majority of the property adjacent to such street proposed to be improved may file a remonstrance with the recorder against the improvement, in which case it cannot be further proceeded with. But if no such remonstrance be filed, the council, within six months from the final publication of the first notice, may commence to make the improvement. The first step is to ascertain and determine the probable cost of making the improvement, and assess upon each lot or part thereof liable therefor its proportionate share of such cost. When the probable cost of the improvement has been ascertained and determined, and the proportionate share thereof of each lot, or part thereof, has been assessed, the council must declare the same by ordinance, and direct its clerk to enter a statement thereof in the docket of the city liens, which is a book provided for that purpose, and in which must be entered the number or letter of the lot assessed, and of the block in which it is situated; and where a separate assessment is made upon a part of a lot, such part must be particularly designated. The name of the owner of the lot, or such part, must also be entered therein, or an entry made that the owner is unknown; and also the sum assessed upon such lot, or part thereof, and the date of the entry. From the date of such entry of an assessment upon a lot, or part thereof, the sum therein entered is to be deemed a tax levied and a lien thereon, but it cannot be collected until, by order of the council, fourteen days' notice thereof is given by the recorder, by publication, in one of the newspapers before mentioned, and such improvement of the street fronting or abutting upon such lot, or part thereof, has been completed. Then the council may order a warrant for the collection of the same to be issued by the auditor,

directed to the city marshal, requiring him to levy upon such lot, or part of lot, upon which the assessment is unpaid, to sell the same, which warrant shall have the force and effect of an execution, and be executed in like manner, subject to certain regulations prescribed in the said charter. The council must provide, by ordinance, for the time and manner of the work on any proposed improvement; must let the work to the lowest bidder; and when a street, or part thereof, has once been improved, under and by virtue of said provisions before mentioned, it is not subject to be again improved, but may be repaired, except that when the improvement of such street has only been a partial improvement, the council is authorized to make a full improvement, as in the case of an original improvement of a street, and subject to the same restrictions and qualifications.

This, substantially, is the power conferred upon the officers of said city in regard to the improvement of streets, and the mode of exercising it. The authority and manner of executing it are similar in principle to that possessed by a great majority of the municipal corporations in the United States. The law applicable to the subject in general is definitely settled. That it is a special and limited power, and that it can only be exercised in the mode pointed out in the act which grants it, admit of no question. No officer of any municipal government should be ignorant upon that point, or fail to understand that a street improvement cannot be made, and the expense thereof legally assessed upon the adjoining lots, without a strict observance of every requirement of the city charter upon the subject. It is in that respect like every restricted and qualified power. It is allowed to be exercised only upon the terms upon which it is granted. Hence, in order to improve a street in the city of East Portland, and legitimately charge the

expense thereof upon the lots fronting and abutting upon it, the several duties before referred to must be strictly performed, and the conditions authorizing it exist.

It is claimed upon the part of the respondents in this case that the council of said city, in attempting to improve said L Street, did not cause the recorder to give the proper notice of the intended improvement—at least, he gave a notice that was insufficient; and the council acted upon it. The alleged defect in the notice is that it did not specify with convenient certainty the street, or part of street, proposed to be improved, and that kind of improvement to be made. The notice stated, in substance, that the council proposed to improve said street from a certain point to a certain point, by building an elevated roadway and sidewalks of full width from Water Street eastward to the bank of earth elevation between Third and Fourth streets, and from the latter point eastward to Fifth Street, by laying, "where the same may be required," a plank roadway of full width, with sidewalks. The respondents' lots fronted and abutted upon that part of said street between "the bank of earth elevation" referred to and said Fifth Street; and they allege in their complaint that said L Street had been once improved between points including said part of it, at the expense of the adjoining lots, by authority of the said council; and that it was in a good condition when the latter improvement was proposed, and that they were assured by the city authorities after said notice was published, and while they had the right to remonstrate against the proposed improvement, that the improvement of the part of the street affecting their lots would only consist in placing an occasional plank thereon, where the same was necessary; that the cost thereof would be trifling, and that that was the object of including in the written notice

published the qualifying words referred to.  I am of
the opinion that the defect was fatal.  It is very evident
that a lot-owner, under the circumstances mentioned,
might very easily be misled by such a notice.  Knowing
that the street upon which the lot fronted was in a rea-
sonable condition of improvement, a lot-owner would
have a right to believe, where the intention to improve
was expressly declared to be by laying, *where the same
may be required,* a plank roadway, etc., that it would only
cost a trifling sum.  The notice herein failed to express
the kind of improvement to be made.  Lot-owners who
are compelled to pay the expenses of such a proceeding,
or have their property sold to satisfy it, should be ap-
prised of the character and extent of the improvement
intended.  That, evidently, is the object of requiring
the notice, and it would not serve the purpose designed
if left in uncertainty.  The common council should have
ascertained where the plank roadway would be required
to be laid, and specified it in the notice before its pub-
lication.  That would have enabled the owners of the
lots affected thereby to have known how much money
they would be likely to have to pay in order to defray
the expense, and either to prepare for it or remonstrate
against the improvement.  Public officials ought to be
considerate in regard to such affairs before they attempt
to impose burdens upon others.  A new, regular, and
systematic improvement of a street may be gratifying to
æsthetic people, but it often seriously embarrasses those
who have to pay for it.

Another objection to the regularity of the proceeding
is that the name of the owner of the lots in question was
not entered in the docket of city liens, nor that the owner
was unknown.  It appears from the pleadings that no
entry of the name of any owner was made in said docket,
except under the head of " owner " in the statement was

written, "J. C. Hawthorne, Est. of." J. C. Hawthorne died long before said entry was made, and that fact was well known to all the officers of said city. The counsel for the appellants claims, however, that as the provisions of the charter allow the auditor to take the certificate of the county clerk for the county of Multnomah as to who is the owner of the property, and as the records of the county showed that the owner of the lots was J. C. Hawthorne, and that at the date of the ordinance declaring the assessment said Hawthorne was deceased, the charter was complied with. Said counsel also claims that real estate taxed in the name of a person other than the owner does not invalidate the assessment; that an assessment upon the estate of deceased persons may be held to be good; and that a mistake in that respect not calculated to mislead will not vitiate. I have examined the authorities referred to by the counsel to sustain the positions, but am of the opinion that none of them are directly in point. They are mostly adjudications that have been made under different statutes from that in question. I doubt very much whether any case can be found where an act has provided in express terms that the assessment shall contain the name of the owner, or that the owner is unknown, that the requirement has been dispensed with. Such a case would be contrary to the general principle that underlies that character of the proceeding. The principle is well expressed in *Corporation of Washington* v. *Pratt*, 8 Wheat. 681. That case was a similar one to this. It was a suit to enjoin the corporation of the city of Washington from executing conveyances to purchasers under sales for the payment of taxes. It was there held that a sale of unimproved squares or lots in the city for the payment of taxes was illegal, unless such squares and lots had been assessed to the true and lawful proprietor thereof. The act of congress under

which the assessment was attempted to be made provided that the notice of sale for the non-payment of the tax should, among other things, state "the name of the person or persons to whom the same may have been assessed." The court construed those words to mean the actual owner of such lots; and in speaking of the question as to whether such sale would be illegal, merely because such squares and lots had not been assessed to the true and lawful proprietors thereof, without any willful mistake or willful neglect on the part of the person who made the assessment, the assessors having used due diligence to ascertain the true proprietors, it used the following language:

"This question, as well as every other in the cause, must find a solution in the provisions of the law which vests the power to sell. Where these are explicit and consistent, there is no ground for adjudication but their literal meaning. That they must be construed strictly, follows from their affecting private rights, and particularly rights of freehold; and that they must be pursued strictly, is the consequence of their being the sole foundation of the powers executed under them."

The reason could be expressed, perhaps, in fewer words still, by saying that the legislature that granted the power prescribed the condition upon which alone it could be exercised. To illustrate this more fully, I quote further from the language of the court in *Corporation of Washington* v. *Pratt, supra:*

"It was undoubtedly in the power of Congress to have left what latitude they pleased to the assessor in designating the owner; but if they have confined him to the necessity of determining the true owner, it is not in our power to enlarge his discretion. It may be a hardship upon the corporation, but the legislature only can decide whether that hardship shall be perpetuated or not. It must be observed that the alternative is one which would

put it in the power of the assessor to designate a mere nominal owner, a kind of casual ejector, in every case. Had Congress intended to lighten the labors of the corporation or their assessor in this respect, there were very simple means of doing it. They might have sanctioned a designation with reference to the first or last vendee of record."

It seems to me that this principle cannot be shaken, and that the only thing to be determined in such a case is to ascertain what the legislature has said. As to the effect of a certificate of the county clerk for the county of Multnomah regarding the ownership of the property, it is not necessary to consider. I do not understand that the auditor obtained any such certificate in this case, but if he did, and it was of the import suggested in the appellants' argument, it could not have aided the defense in the suit. A certificate of that character would not show who was the owner of the lots. It may have shown that J. C. Hawthorne had owned them in his life-time, and leave the inference that they then belonged to his heirs, but it would not have been any certificate of the ownership at the time, whatever effect a proper certificate of that character may have had. It is my opinion that an assessment for a street-improvement, if otherwise regular, would be valid if the auditor took such certificate, stating who was the owner of the lot, and entered the name so certified in the docket of city liens, although it was not in fact the name of the owner; but in such case it would have to be the name of a person who could be such owner. A deceased person, of course, could not be an owner of property, and the insertion of such a name would necessarily be a nullity, from whatever source the auditor obtained it. A tax for street improvements is not against the person—it is against the property; and to render it valid, the act under which

it is levied must be complied with in terms, and when that is done, no matter what those terms are, it becomes a legal charge upon the property. The name of the owner, or that the owner is unknown, is inserted in the docket because the statute requires it; and if the auditor inserts therein as owner the name of a person capable of owning real property, and which has been duly certified to him in accordance with the statute, the effect would be the same whether such person was the owner or not. Such certificate must state who is the owner thereof, and if it stated some person not *in esse*, it would not be a compliance with the statute. Under the views here expressed, it necessarily follows that the name "J. C. Hawthorne, Est. of," entered as the name of the owner in the docket of city liens, was no compliance with the terms of the city charter upon the subject. The same determination was had in a number of cases cited by the respondents' counsel upon the argument.

Another objection urged against the legality of the improvement is that said L Street had been improved in 1872, by authority of said city, at the expense of the adjacent property. It is conceded upon the part of the appellants that the street was so improved, but is denied that it was a full improvement—is claimed that it was but a partial improvement, and that it was therefore subject to be again improved. It appears from the pleadings and statements of counsel that on the eighth day of April, 1871, the city council passed an ordinance providing for the improvement of a part of said street, including that portion of it adjacent to and abutting upon the lots in question; that the improvement between Fourth and Fifth streets, as provided in said ordinance, consisted of grading the street to the established grade, and the laying of a plank roadway sixteen feet wide, and sidewalks and cross-walks and gutter; that the street is sixty

feet wide, and the improvement as to the planking only extended over half the roadway; that it left on each side of the planking, and between it and the sidewalk, a space of eight feet, which was graded, but not planked. Upon this state of facts, the court is called upon to determine whether the former improvement was a complete or partial one. But I do not understand that the question is of any importance whatever, in view of the provisions of other parts of the charter. Section 28 of article 6 of the charter authorizes the council to repair any street, or part thereof, whenever it deems expedient, and to declare by ordinance, before doing the same, whether the cost thereof shall be assessed upon the adjacent property, or paid out of the general fund of the city; and section 29, same article, provides that if the council declare that a proposed repair shall be made at the expense of the adjacent property, thereafter the proposed repair is to be deemed an improvement, and shall be made accordingly; but if the council declare that the cost of the same shall be paid out of the general fund, the repair may be made as the ordinance may provide, and be paid accordingly; and that whenever it becomes necessary to replace or rebuild any elevated roadway, it shall be deemed an improvement. A part of these various provisions were in the original charter, and the other part has got in the charter by amendments. The result is, the improvement of streets and repair of streets have become confounded. If the expense of the repair is to be charged upon the adjacent property, it is an improvement; the distinction, therefore, in such cases, is only in name. The proceeding out of which this controversy has arisen may be termed either an "improvement" or "repair;" the test seems to be whether the expense is to be charged upon the adjacent lots. If the council should term an "improvement" a "repair," it would be immaterial, and I

do not see why the work undertaken, in regard to the improvement of L Street, as shown in this case, could not have been termed a "repair" as well as an "improvement." When the council declared that it should be made at the cost of the adjacent property, it was then deemed an "improvement," and had to be made accordingly. (Sec. 29, *supra*.)

There are some other questions regarding the legality of the improvement in question, but they are not of a very serious character, nor is it necessary to determine them in this case.

The strong point in the defense made by the appellants' attorney is the delay upon the part of the respondents to commence the suit to enjoin the collection of the tax. That question addresses itself with great force to the equity side of the court. It is a fundamental principle of equity that a party who encourages an improvement of the character of the one in question to be made, and from which he derives a benefit, shall not be allowed thereafter to question its legality; that it will not afford him any remedy, under such circumstances. That doctrine is maintained by numerous authorities, but they all proceed upon the ground of an equitable estoppel. None of them go far enough to defeat the remedy of a party to have proceedings enjoined in such case upon the mere ground that the improvement has been beneficial to his property. They apply to cases where the party has, by some act, consented to the improvement resulting in the assessment. We cannot say in this case that the respondent gave her consent to the proceedings. She opposed them when she ascertained that a full improvement of the street was intended; and her failure to adopt some other remedy to avoid the enforcement of the assessment is not sufficient of itself to deprive her of the remedy invoked in the suit. I am conscious of the hard-

ship imposed upon the tax-payers of a city in allowing parties to escape the payment of the part which they should in justice contribute, upon technical grounds, when they have received the benefit, but that can only be remedied by legislative provision. The courts are powerless to afford a remedy in such a case unless it comes within some acknowledged principle of jurisdiction. The decree appealed from must therefore be affirmed.

WALDO, C. J., concurs in the result; LORD, J., expresses no opinion.