## TRACY *v.* REED.

*(Circuit Court, D. Oregon. March 4, 1889.)*

1. TAXATION—ASSESSMENT—VALIDITY.
   By the act of 1882, (Comp. 1887, § 2735,) real property must be assessed to the owner thereof, unless it is unoccupied, and the owner unknown; and an assessment made to a person not the owner of the property is invalid.

2. SAME—"OWNER."
   The owner of property, for the purpose of taxation, is the person having the legal title or estate thereto or therein, and not one who, by contract or otherwise, has a mere equity therein, or a right to compel a conveyance of such legal title or estate to himself.

3. SAME—TAX-DEED—STIPULATION—EFFECT.
   An act of the legislature (Comp. 1874, p. 767, § 90) made a tax-deed conclusive evidence of the regularity of the assessment, except for fraud; and, on the trial of an action brought by the grantee in such a deed to recover possession of the premises mentioned therein, the parties stipulated the existence of certain facts, from which it appeared in the judgment of the court that the assessment in question was made to a person not then the owner of the property. *Held,* that the effect of such stipulation was a waiver by the plaintiff of the conclusive character of the deed in this respect, and an admission that, if in the judgment of the court the person to whom the property was assessed was not the true owner thereof, then the assessment was invalid, and the tax-deed void.

4. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—TAXATION—TAX-DEED AS EVIDENCE.
   A tax-deed made in pursuance of a sale of property for a delinquent tax, under an act which provided that such deed shall be conclusive evidence of the regularity of the assessment, except for fraud, is a contract with the state that the deed shall so far remain conclusive evidence of title in the grantee therein, and a subsequent act of the legislature, making such deed only *prima facie* evidence of such regularity, is void, because it impairs the obligation of the contract. The ruling in *Marx* v. *Hanthorn,* 12 Sawy. 377, 30 Fed. Rep. 579, on this point, affirmed.

*(Syllabus by the Court.)*

At Law.

Action by Edward Tracy against Mary A. Reed, to recover land.

*W. Scott Beebe* and *John M. Gearin,* for plaintiff.

*Alfred F. Sears* and *Paul R. Deady,* for defendant.

DEADY, J. This action is brought by the plaintiff, a citizen of California, against the defendant, a citizen of Oregon, to recover the possession of lot 3, in block 206, of the Couch addition to Portland.

The pleadings consist of the complaint, answer, and reply, from which it appears that the plaintiff claims title to the lot under a sale thereof for a delinquent tax thereon, on June 18, 1884, to which claim two defenses

are pleaded: (1) The assessment on which said tax was levied is void, because not made to the owner of the property; and (2) the tax was paid before the sale took place. The defendant also brings into court, and deposits with the clerk, under section 2823, Comp. 1887, the sum of $15.65, the same being the amount of the tax of 1883, and the accruing cost and interest thereon.

The case was submitted to the court for trial without the intervention of a jury, and upon a stipulation concerning certain facts, with the right to either party to introduce further evidence on the trial.

From this stipulation it appears that the property in question exceeds in value the sum of $2,000, and that on July 10, 1880, R. Glisan, being the owner thereof, bargained and sold the same to the defendant by an agreement of that date, signed by himself and wife, and by the defendant.

By the terms of this agreement, erroneously called "a bond for a deed," the defendant was to pay $300 for the property,—the one-half down, and remainder in quarterly payments of $18.75 each, with interest; whereupon the vendors were to convey the premises to her in fee-simple. It was also agreed that the defendant might take possession of the premises at once, and that she would pay all taxes that might be levied on the property; and that, if the purchase money due under the agreement was not all paid by July 10, 1882, the agreement should become null and void at the option of Glisan, and all money then paid thereon become forfeited to the vendors.

On September 14, 1881, the defendant paid the remainder of the purchase money, and on June 7, 1887, the vendors duly conveyed the premises to her.

Prior to July 10, 1880, the property was assessed to R. Glisan as the owner thereof, but after the making of said agreement, and for and during the years 1880 to 1887, both inclusive, the same was assessed to the defendant, without complaint or objection from any one. It is admitted that during the same period, except for the year 1883, the defendant paid the taxes levied on the property in pursuance of said assessments, and she claims to have paid it for that year also.

On May 17, 1884, the sheriff of Multnomah county, in pursuance of a warrant from the county court thereof, levied on the premises as the property of the defendant, for the purpose of collecting the tax levied thereon in 1883, alleged to be then delinquent, and amounting to $3.90, notice of which levy and the sale thereon was duly published in the Daily Oregonian on May 19, 1884; and on June 18, 1884, the property was offered for sale and bid in by the plaintiff for the sum of $6.47, and, no redemption being made thereof, on June 6, 1887, he received a deed from the sheriff therefor.

In December, 1884, the defendant took possession of the premises, and moved into a house thereon, which she commenced to build on the 4th of July previous, in which she has ever since resided.

The defendant testifies that she can neither read nor write; that in the spring of 1884 her daughter, Mrs. Belle Read, came to her with a news-

paper in her hand, and called her attention to the fact that her lot was advertised for sale for a delinquent tax, and that she and her daughter went the same day to the sheriff's office and paid the tax to the deputy, A. W. Witherell, then in attendance there, but whether she got a receipt or not she is not certain, and, if she did, she says it is lost or mislaid. In this statement she is corroborated throughout by her daughter. James Sheridan, who was boarding with the defendant in the spring of 1884, testifies that he heard the conversation between the daughter and the mother concerning the property being advertised for sale, and saw them go out of the house later in the same day, saying they were going to the sheriff's office to pay the tax.

The deputy testified that he has no remembrance of the tax being paid; that there is no stub in the receipt book showing the payment of the tax, as there should be, if it was paid; and he is therefore quite confident it never was paid.

The defendant and her daughter both state that a Mrs. Ann Keating, with whom the latter was living at the time, accompanied her to the house of the defendant, to inform her that the tax was delinquent, and then went with them to the sheriff's office, and saw the same paid. The deposition of Keating was read by the plaintiff, in which she denies this story, so far as she is concerned, *in toto.* But Sheridan testified that a woman, not known to him, came to the house on this occasion with the daughter, and afterwards left the house with her and the defendant, when the latter said she was going to pay the tax.

The testimony of the deputy, Witherell, that the tax was not paid, because he does not remember it, and because there is no stub to that effect in the receipt book, is, in effect, but little more than the legal presumption that he did his duty in the premises; that is, if the tax was paid, he gave the party a receipt therefor, and made a corresponding entry on the stub thereof. Comp. 1887, § 766, subsec. 15; 2 Whart. Ev. §§ 1318, 1319.

The statute (Comp. 1887, § 2801) makes it the duty of the sheriff on "the receipt of money for taxes" to give a receipt therefor; and contains a form of the stub thereof, which he keeps in his office, and the particulars to be entered thereon.

The direct, affirmative testimony of one altogether credible witness to the fact of payment of taxes ought to be sufficient to overcome this presumption. But the defendant is pecuniarily interested in the result, and the daughter is as likely to be influenced by that fact as her mother.

I fear it would in some, if not many, instances make tax-titles a delusion and a snare if they could be avoided by the mere oath of the delinquent or his immediate relatives or prospective heirs that the taxes had been paid without taking a receipt therefor.

And the fact that no receipt was taken by the defendant for the payment of this tax is a circumstance of some weight against the statement that the same was paid. The officer would naturally give the defendant a receipt, and she would most naturally, if necessary, demand one.

The testimony of Mrs. Keating does not contradict the testimony of the defendant and her daughter as to the payment of the tax, but only a collateral circumstance of the transaction, as related by them, namely, her presence at such payment.

But, notwithstanding Keating's testimony, the defendant may have paid the tax, and, what is more, her testimony may not be true. It is not apparent what object the defendant could have in falsely connecting her with the transaction. Her memory may be at fault with reference to the person who came to the house with her daughter and went with them to the sheriff's office; for Sheridan, who seems to be a disinterested and fair witness, says that some woman came to the house with the daughter on the occasion in question, and went with the parties when they left the house.

I was certainly impressed on the trial with the apparent fairness and candor of the defendant and her daughter as witnesses; and it does not seem probable that the former would, even if she had allowed this property to go to sale for the paltry sum of this tax, have taken no steps to redeem the same within the two years allowed by law, or would have continued to pay the taxes on the property in the mean time. I can but think she was at least laboring under the impression that the tax of 1883 was paid. The property was her home, and probably all she had of any value in the world, and it seems improbable that she would consciously sacrifice it for the paltry sum of $3.90.

And yet I do not feel satisfied, under the circumstances, to find as a matter of fact that this tax was paid by the defendant.

This leads to the consideration of the question: Was there any valid assessment of this property preparatory to the levy of this tax?

Section 2735 of the Comp. of 1887, (section 2, act Oct. 26, 1882,) provides:

"All lands shall be assessed and taxed in the county where the same shall lie, and every person shall be assessed in the county where he resides when the assessment is made, for all real and personal property then owned by him within such county; and unoccupied land, if the owner is unknown, may be assessed as such, without inserting the name of any owner."

By this act, the rule prescribed in section 6 of the act of 1854, (Comp. 1874, p. 750, § 7,) which allowed "land owned by one person and occupied by another" to be assessed in the name of either, was changed. In the act of 1882, sometimes called "the mortgage tax law," the provision allowing an assessment to be made in the name of a mere occupant was omitted for some reason, and now, and since then, land is required to be assessed to the owner, unless it is unoccupied, in which case it may be assessed as such, without naming the owner.

When a person is assessed "for" real property, as being "owned" by him, he must be designated on the assessment roll as the owner of the same. It is not sufficient to assess or value the land for taxation generally. It must be assessed or valued as the land of the owner thereof, and not as that of another. Cooley, Tax'n, 278.

In *Marx* v. *Hanthorn*, 12 Sawy. 373, 30 Fed. Rep. 579, this court

held that, where the statute requires property to be assessed in the name of or to the owner, the name is a part of the description of the premises, and, I may add, is a material part of the transaction.

It may be that the action of the assessor in assessing unoccupied land to an unknown owner cannot be attacked in a proceeding like this, except for fraud. But the ownership of this land was known. It had been assessed to R. Glisan prior to 1880, as the owner thereof, and, so far as appeared of record, he was still such owner. Nor is it claimed that the owner was unknown.

Was that ownership changed prior to 1883, when this assessment of the property was made to the defendant? The legal title and estate were still in Glisan. By virtue of the agreement of sale and the payment of the purchase price, the defendant had an equity, as against Glisan or any one who might take the legal title from him with a knowledge of the facts, to have a conveyance of the property made to her,—to have a specific performance of the contract of sale. But the property was not "owned" by her, in the legal acceptance of the phrase, until the conveyance was made to her, in 1887. Nor is the fact that she agreed in the mean time to pay the taxes material. This was a mere private arrangement between the vendors and vendee, of which the law took no cognizance. A lessee of property might agree to pay the taxes thereon, but that would not make him the owner of the property for the purpose of taxation or otherwise.

Nor is it material that the defendant paid the taxes on the property after the sale to her. She did so, not because the state had any legal claim upon her for such taxes, but in pursuance of her contract with her vendors to that effect. And in so doing, so far as the state was concerned, she was acting as the agent of such vendors. Nor was she bound to object to the assessment of the property in her name, if she was ever aware of it. It was not her duty to instruct the assessor to whom to assess the property; and it is not claimed that she ever returned it for assessment as her own. And, finally, no one was prejudiced by her silence or acquiescence. Cooley, Tax'n, 573.

It is true that the term "owner" is sometimes used in a large and comprehensive sense, or at least is so construed. For instance, where it is used to designate the person who may redeem property sold for taxes or upon execution, it may be and is construed in the interest of justice and convenience to include the holder of an equity, or what is sometimes called the owner of the "equitable estate."

In *Dubois* v. *Hepburn*, 10 Pet. 22, the supreme court held that a statute of Pennsylvania, which gave the "owner" or "owners" of land sold for taxes the right to redeem the same, included an owner of an undivided part of the property, so that he might redeem the whole tract. In the course of his opinion, Mr. Justice BALDWIN said such a law ought "to receive a liberal and benign construction;" nor should the right to redeem be "narrowed down by a strict construction." And, continuing, he said: "Any right which, in law or equity, amounts to an ownership in the land; any right of entry upon it, to its possession or enjoyment,

or any part of it which can be deemed an estate in it,—makes the person the owner, so far as it is necessary to give him the right to redeem."

But the owner spoken of in the statute relating to assessment of land for taxation is the legal owner,—the one having the *jus disponendi*, or the right of disposal. The statute declares that a sheriff's deed to a purchaser at a tax-sale shall pass the "legal title" to the premises, thereby necessarily implying that, if the land is not assessed to owners unknown, it must be assessed in the name of the person in whom such title is vested at the time. The record of deeds is *prima facie* the proper evidence of ownership for the purpose of taxation; and the statute should have limited the word "owner" to the last vendee of record.

In *Washington* v. *Pratt*, 8 Wheat. 681, it was held that a statute authorizing a sale of lots in Washington city for delinquent taxes, on a notice varying in length according to the residence of the parties, whether within the District of Columbia or without the United States, to whom "the property belongs," which notice, among other things, was required to contain "the name of the person or persons to whom the same may have been assessed," did not authorize the sale of a lot assessed to any one but the "actual" owner.

In *Davis* v. *Cincinnati*, 36 Ohio, 27, it was held that, where a statute made an assessment on a lot for street improvements, a debt or demand that could be enforced against the "owner" thereof in a personal action, such action could not be maintained against a lessee of the property, and that no one was the "owner" of the same, within the meaning of the statute, who had less than a freehold interest therein.

In reply to the suggestion of counsel that the assessment of this property is a proceeding *in rem*, and that the name in or to which it is entered on the assessment roll is a matter non-essential, attention is called to the cases of *Dowell* v. *Portland*, 13 Or. 248, 10 Pac. Rep. 308, and *Hawthorne* v. *East Portland*, 13 Or. 271, 10 Pac. Rep. 342. Both cases were assessments for improving streets, and the statutes under which they were made required that they should be entered in a record, called the "Docket of City Liens," in the name of the owner of the property. In the first case the name of the father of the owner was used, and in the second one the property was assessed to the estate of a deceased person. The court held the assessments void, because they were not entered in the docket in the name of the true owner.

The warrant for the collection of a delinquent tax requires the sheriff to make the tax out of the personal property of the delinquent. Comp. 1887, § 2814. But how can this command be obeyed unless the assessment is made to the owner of the property. So far the tax is a personal charge, to be enforced by the sale of the owner's goods and chattels, if any be found. If the real property of A. may be assessed to B., then the personal property of B. may be taken and sold to pay the tax on the real property of A., which could never have been the intention of the legislature.

Something remains to be said concerning the legal effect of the sheriff's deed to the plaintiff.

By the law in force when this sale was made such deed was *prima facie* evidence of the regularity of the prior proceedings, which presumption, could not, as to the assessment, be overcome except by proof that the same was fraudulent. Comp. 1874, p. 767, § 90. An assessment cannot be considered fraudulent, simply because, so far as appears, the assessor has ignorantly or carelessly assessed the property to the wrong person as owner. *Marx* v. *Hanthorn*, 12 Sawy. 374, 30 Fed. Rep. 579.

The legislature may make a tax-deed conclusive evidence of the regularity of all such prior proceedings as are mere matters of expediency, —acts which might have been dispensed with in the first place. And in my judgment the entry of property on the assessment roll in or to the name of the owner is one of them. *Marx* v. *Hanthorn, supra,* 374, 375.

It follows from these premises that when the state sold this lot to the plaintiff it contracted with him that the legal effect of his deed should not be changed or overcome by proof that the property was assessed, without fraud, to the wrong person as owner.

The act of February 21, 1887, (Comp. 1887, § 2823,) makes the sheriff's deed *prima facie* evidence only of the regularity of the prior proceedings, and therefore it may be overcome by proof to the contrary in any respect,—as that the property was assessed, without fraud, in the name of a person who was not the true owner. In this respect the act of 1887, if held applicable to the plaintiff's deed, would change its legal effect as a muniment of title, and so far impair the obligation of the contract with him, contrary to the constitution of the United States. *Marx* v. *Hanthorn, supra,* 376. Nor is it material that the deed was not executed until after the passage of the act of 1887. The contract of the state with the plaintiff arose out of the circumstances of the sale, and the law then in force and applicable to the transaction.

I am aware that the majority of the supreme court of the state, in *Strode* v. *Washer,* 16 Pac. Rep. 928, since the decision of this court in *Marx* v. *Hanthorn, supra,* but apparently without being aware of it, have decided this question otherwise. But the question is a federal one, and the national, instead of the local, courts give the law on the subject. But, in view of the opinion of Mr. Justice THAYER in *Strode* v. *Washer,* I admit that there is no question but that the legislature may shift the burden of proof between the purchaser and the delinquent tax-payer. But this is not that case. The section 90, *supra,* closed the door against all further proof, and said in effect that no evidence should ever be received to impair the legal effect or operation of the deed in this respect.

A deed given by the state on such a legislative assurance is a contract, a warranty against the existence of any such defect in the prior proceedings, which the state cannot vary or impair.

But by the voluntary stipulation of the parties it is admitted that certain facts exist which, in the judgment of the court, show that the property was not assessed to the true owner, and that therefore the assessment is invalid. The plaintiff thereby waived the conclusive effect of his deed in this respect, and practically admitted that if, upon the facts stated, the defendant was not, in the judgment of the court, the owner of the

property within the purview of the tax law, the assessment was invalid, and his deed void.

A finding of fact will be filed to the effect that the tax was not paid by the defendant, and that the assessment was made to the defendant as owner, when R. Glisan was the true owner; and of law that the defendant is entitled to the possession of the premises, and a judgment in bar of the action, and for costs.