# BRANTING v. SALT LAKE CITY.

## No. 2780. Decided Dec. 1, 1915. (153 Pac. 995.)

1. MUNICIPAL CORPORATIONS—IMPROVEMENTS—NOTICE. If the statute requires notice of intention to make the particular improvement to be published, such notice cannot be dispensed with.[1] (Page 298.)

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—NOTICE—SUFFICIENCY—"ESTIMATE." Comp. Laws 1907, section 273, requires the original notice of intention to state the estimated cost of the improvement. A notice giving the estimated cost of a sewer was published in 1906. After publication, but before the contract was let and before the special assessment was made and tax levied, the Legislature by Laws 1907, c. 127, added to the existing law an amendment providing that any levy of a special tax for special improvements shall not, be made until the cost of such improvement shall first have been ascertained by contract duly let to the lowest bidder after publication of notice, and the cost of the improvement shall not exceed to the property owner the amount of the contract. Comp. Laws 1907, section 274, declares that all special taxes to cover the cost of any public improvement shall be levied and assessed on all abutting realty to the extent of the benefits. After the amendment, but without publishing a new notice of intention, the city advertised for bids, and the lowest responsible bid was for an amount greatly in excess of the estimated cost. Before making the assessment, the city, as required by section 265, duly published notice to the taxpayers in which it named a time and place when and where any taxpayer who felt aggrieved could question the justness or validity of the assessment and levy of the tax. An abutting owner made no protest, and, the contract being let, the work was completed. *Held*, that, as an "estimate" is merely a proximate judgment or opinion, the city did not under the amendment to the statute lose jurisdiction to levy an assessment in excess of the estimated cost of the improvement; there being no provision that the cost should not exceed the estimate and property holders being given an opportunity to object to the assessment.[2] (Page 298.)

[1]*Argyle* v. *Johnson*, 39 Utah, 500, 118 Pac. 487; *Jones* v. *Foulger*, 46 Utah, 419, 150 Pac. 933.

[2]*Armstrong* v. *Ogden City*, 9 Utah, 255, 34 Pac. 53; *Jones* v. *Foulger*, 46 Utah, 419, 150 Pac. 933; *Stott* v. *Salt Lake City*, 47 Utah, 113, 151 Pac. 988.

3.  MUNICIPAL CORPORATIONS—ASSESSMENTS—IRREGULARITIES. Where
    a city had jurisdiction to levy an assessment and the proceed-
    ings were merely irregular, an abutting owner, who was bene-
    fited by the work, cannot, having allowed completion without
    objection, thereafter object to an assessment for the amount of
    the contract price. (Page 308.)

4.  LIMITATION OF ACTIONS—STATUTE APPLICABLE—ENJOINING AS-
    SESSMENT—"SUIT TO QUIET TITLE." An action to enjoin an as-
    sessment levied on account of a municipal improvement is not,
    though the assessment was a lien, a "suit to quiet title," as the
    abutting owner's title was not questioned, and hence the action
    is governed by the four-year limitation prescribed by Comp.
    Laws 1907, §2883. (Page 308.)

Appeal from District Court, Third District; *Hon. T. D. Lewis*, Judge.

Action by L. Franklin Branting against Salt Lake City, a municipal corporation.

Judgment for plaintiff. Defendant appeals.

REVERSED, and complaint dismissed.

*H. J. Dininny, City Attorney,* and *W. H. Follard, Assistant City Attorney,* for appellant.

*Dey, Hoppaugh & Fabian,* for respondent.

FRICK, J.

The plaintiff, hereinafter called "respondent," commenced this action in equity. In his complaint he asked the court to annul certain ordinances and proceedings which were passed and adopted by the authorities of Salt Lake City by virtue of which a certain local improvement, to wit: a sewer, was ordered constructed, and a special tax was assessed and levied upon the abutting property to defray the cost of constructing the same. Hereinafter both the city authorities and said city will be referred to as "appellant" merely.

The plaintiff, in his complaint, among other things, alleged:

"That he brings this action for himself and for all others

similarly situated who choose to join him. and contribute to the expense hereof and become parties hereto.''

The complaint is very long, and the proceedings which are assailed are set forth with much particularity and detail. We shall, in the course of opinion, refer to such matters as are deemed material.

While it is not disputed in the complaint that the appellant had complied. with all the jurisdictional steps required by our statute to authorize it to order the sewer constructed and to make the assessment and to levy the special tax to pay therefor, yet it is alleged that the appellant exceeded its jurisdiction or authority in making an assessment and in levying a tax in excess of a certain amount as hereinafter stated. The appellant set up various defenses to the action, and to those we deem material we shall refer later.

The facts, as found by the court, are not in dispute; but the conclusions of law and judgment in favor of respondent are vigorously assailed by the appellant. The particular statute upon which the tax proceedings are based **1, 2** has frequently been considered by this court. In *Armstrong* v. *Ogden City,* 9 Utah, 255, 34 Pac. 53; *Jones* v. *Foulger,* 46 Utah, 419, 150 Pac. 933, and again in *Stott* v. *Salt Lake City,* 47 Utah, 113, 151 Pac. 988, the statute is set out in full, and the steps which are deemed jurisdictional are there set forth. The question that is raised in this proceeding by the respondent was, however, not considered in any of those cases.

While it is conceded that the appellant complied with all the provisions of the statute in ordering the improvement in question, it is nevertheless insisted that when it levied the special tax it exceeded its authority, in that it assessed and levied the tax for a larger amount than it was authorized to do. This question arose as follows: By an examination of our statute (Comp. Laws 1907, section 273) it will be seen that in publishing the original notice of intention the appellant was required to state, among other things, ''the estimated cost of the improvement.'' The appellant complied with that requirement, but in describing the district which was affected by the improvement it stated the number of linear feet to be 54,978 and the estimated cost of the improvement which was

to be paid by said 54,978 feet as $71,471.40, or $1.30 per front foot. The improvement, that is, the sewer in question was ordered, and the notice aforesaid was published in the year 1906. After the notice was published, but before a contract to construct the sewer could be entered into, and before the special assessment was made and the tax levied, the Legislature of this state adopted an amendment to the law as then existing, which amendment provided:

"That any levy of a special tax for special improvements shall not be made until the cost of such improvement shall first have been ascertained by contract, duly let to the lowest responsible bidder, after publication of notice, * * * and the cost of such improvements shall not exceed to the property owner the amount of the contract entered into for the performance of the work." Chapter 127, Laws of Utah 1907, p. 194.

By another statute (Comp. Laws 1907, section 274) which was then in force it is provided:

"All special taxes to cover the cost of any public improvement herein authorized shall be levied and assessed on all blocks, lots, parts of blocks and lots, lands, and real estate bounding, abutting, or adjacent to such improvement or within the districts created for the purpose of making such improvement, to the extent of the benefits to such lots," etc.

After the law was amended, but without publishing a new notice of intention, the appellant advertised for bids as required by the statute for the construction of the sewer in question, and the lowest responsible bid it obtained for the construction of the sewer amounted to $2.15 per front foot. The contract was accordingly let to the lowest bidder for the amount aforesaid. After the cost was ascertained as required by the statute, the appellant duly made the assessment and levied the tax, amounting to $2.15 per front foot, upon all of the abutting property, including the respondent's. Before making the assessment, however, appellant, as provided by Comp. Laws 1907, section 265, duly published notice to the taxpayers, in which notice it named a time and place when and where any taxpayer who felt aggrieved could be heard respecting the justness or validity or equality of the assessment and levy of the tax as aforesaid. The respondent did

not appear nor offer any objection to the assessment and levy of the tax as proposed, and the tax was accordingly assessed and levied to the amount of $2.15 per front foot, which was in excess of the estimated cost, as before stated. After the sewer was completed, the respondent connected several of his properties therewith, and without objection or protest paid into the city treasury a sum equal to $1.30 per front foot, but refused to pay more; and to avoid paying the same has instituted this action to annul the proceedings whereby the tax was assessed and levied as aforesaid.

Respondent's counsel contend that while appellant could legally assess and levy a tax against the property benefited to the amount of the estimated cost of the sewer, to wit: $1.30 per front foot, yet it had no authority to assess and levy a tax in excess of that amount, and that therefore the difference between $1.30, the estimated cost per front foot, and $2.15, the actual cost of the sewer per front foot, is void. In other words, counsel insist that appellant exceeded its authority in assessing a tax in excess of $1.30 per front foot. Upon the other hand, appellant's counsel contend that, inasmuch as the appellant had fully complied with all the requirements of the statute in ordering the improvement and in assessing and levying the tax in question, what the respondent complains of is, at most, an irregularity, and not a jurisdictional defect. The real question for determination therefore is whether appellant lost or exceeded its power or jurisdiction in assessing the tax in excess of the original estimated cost of the sewer.

There is no question here of fraud, or bad faith, or that the sewer did not actually cost $2.15 per front foot, or that respondent's property is not benefited to that extent; but the sole question hinges upon the proposition just stated.

Counsel for respondent have cited cases in which it is held that in case a statute requires that the estimated cost be given such requirement is jurisdictional, and that the taxing power has no legal authority to assess a tax in excess of the estimated cost, regardless of the actual cost of the improvement. A number of cases to that effect are cited, among which are: *City of Chicago* v. *Wilder*, 184 Ill. 397, 56 N. E.

395, and other Illinois cases; *Kerr* v. *City of Corsicana* (Tex. Civ. App.) 35 S. W. 694; *Hawthorne* v. *City of Portland,* 13 Or. 271, 10 Pac. 342; *Gilmore* v. *Hentig,* 33 Kan. 156, 5 Pac. 781; and *Gainsville* v. *McCreary,* 66 Fla. 507, 63 South. 914. While the foregoing cases are not all that are cited by counsel, yet those referred to sufficiently illustrate the theory upon which the courts base their decisions in holding that the estimates as published were jurisdictional and could not be exceeded in levying the tax. We remark that, with the exception of two or three of the cases just referred to, no estimates were published as required by the statute, and in the cases where such estimates were published they were so defective that they could not be considered as estimates. The taxpayer therefore was practically left in the situation as if no notice or estimate had been published. There are, however, at least two cases cited wherein it is squarely held that an assessment and tax may not be made or levied in excess of the published estimate. Several cases from the Supreme Court of Washington are also cited, namely: *Chehalis* v. *Cory,* 54 Wash. 190, 102 Pac. 1027, 104 Pac. 768; same case in 64 Wash. 367, 116 Pac. 875; and *Collins* v. *City of Ellensburg,* 68 Wash. 212, 122 Pac. 1010-1014. We shall see, however, that the cases from Washington can have no controlling influence under our statute. The foregoing cases are all based upon statutes which essentially differ from ours. While it is true that our statute requires an estimate of the cost of the contemplated improvement to be published, yet the purpose and effect of such estimate is quite different under different statutes. With the assistance of the briefs and arguments of counsel on both sides, we have been enabled to go into the question presented for determination somewhat fully. In doing that we have discovered that the statutes empowering municipalities to assess abutting property for the purpose of paying the cost of public improvements to the extent of the benefits that such property derives from such improvements are of three kinds: (1) Those like the statute of Illinois where the only public hearing respecting the justness, validity, and equality of the proposed assessment and tax is itself provided for in the notice in which the estimate is

contained; (2) those where the municipalities are prohibited from entering into a contract to construct the proposed improvement for any amount in excess of the published estimate; and (3) our own statute. Since the only hearings that are given to the taxpayers under the Illinois statute are based upon the notice containing the published estimate, which must be carefully itemized, and since the assessment is likewise based upon the estimate as published, it is not difficult to understand why the Supreme Court of Illinois arrived at the conclusion that the itemized estimate required under the Illinois statute was jurisdictional and could not be departed from. Moreover, in view that the taxpayer under the Illinois statute was given no other hearing or opportunity to assail the validity or the amount of his assessment, the estimate as published was of the utmost importance. Such publication therefore in legal effect constituted the notice and hearing which every property owner is entitled to under the provisions of both the federal and state Constitutions relating to the term "due process of law." What is required in that regard is very clearly, as well as very tersely, stated in 5 McQuillan, Mun. Corp. section 2074, in the following words:

"Before special assessments can be charged ·upon the property of private persons, the owners must be given notice thereof, with an opportunity to be heard and to contest, if desired, *the validity and fairness of the assessment*, and failure to give such notice, it is usually held, will render an assessment void whether or not notice is expressly required by law. A statute or charter provision authorizing special assessments, which fails to provide for notice to property owners *and an opportunity to be heard at some stage of the proceedings*, is unconstitutional, as depriving persons of their property without 'due process of law.'" (Italics ours.)

It is also said in that connection that, if the statute requires notice of intention to make a particular improvement to be published, such a notice may not de dispensed with.

This court is firmly committed to the foregoing doctrine. See *Argyle* v. *Johnson*, 39 Utah, 500, 118 Pac. 487; *Jones* v. *Foulger, supra.* In the first case referred to, the question of what constitutes sufficient notice and opportunity to be heard under the process of law doctrine is discussed, and some of the leading cases, both state and federal, are there cited. It

is important not to become confused with regard to just what is required in order to constitute, or, rather, to meet the requirement of, "due process of law." A careful reading of the terse, yet comprehensive statement we have copied from McQuillan, *supra,* makes the matter quite clear. The essential requirement is that property owners must be given notice and an opportunity to be heard and to test the validity and fairness of the assessment. Now, under the Illinois statute no opportunity was given except by the notice in which the itemized estimate of the cost of the proposed improvement was published. What is more important still is that the assessment subsequently made was entirely based upon the estimated cost as published. Not so under our statute. As we have already pointed out, appellant, by section 265, *supra,* was required to, and it is conceded that it did, publish notice to the property owners who were affected before making the assessment and before levying the tax. In that notice the amount of the proposed tax was given, and a time and a place for a hearing were fixed, so that any taxpayer who felt himself aggrieved by the tax as proposed was given an opportunity to assail the validity, as well as the fairness or equality, of the assessment and tax. The notice required by that section, which it is conceded was given, was, under all the authorities, in and of itself sufficient to meet the requirement of "due process of law." See the cases cited in *Argyle* v. *Johnson, supra,* at pages 508-509 of 39 Utah, 118 Pac. 487.

But counsel for respondent further contend that notice of intention to make the improvement, which notice should contain the estimate of the cost thereof, was also required by our statute. That is true, and a complete answer to the contention is that such a notice, including the estimated cost, was published precisely as required by our statute. But, say counsel, while that is true, yet appellant departed from the estimate and entered into a contract and made an assessment and levied a tax in excess of such estimate. That, under the Illinois and other decisions to which reference has been made, counsel say, vitiated the assessment in so far as the same exceeded the estimated cost, for the reason that in going

beyond the estimate appellant exceeded its power or jurisdiction. In making that contention counsel entirely disregard other important provisions of our own statute to which we have called attention, and which provisions are not contained in the Illinois statute. While it is true that under our statute it was necessary to publish an estimate of the cost of the improvement, yet the statute did not provide that the estimate should not be exceeded in making the improvement. That is a feature of some of the statutes of the different states, but it is not in our statute. Where the statute so provides, the courts have held that a contract cannot legally be entered into in excess of the estimate of the cost. *Gratz* v. *City of Kirkwood* (1912) 165 Mo. App. 196, 145 S. W. 873. The statute of Missouri (R. S. 1909, section .9407), among other things, provides that before the municipality' shall enter into any contract for building sewers, etc., "an estimate of the cost thereof shall be made by the city engineer or other proper officer and submitted to .the board of aldermen and no contract shall be entered into for any such work or improvement for a price exceeding such estimate." Under such statutes, a clear limitation of the right to contract is placed upon the municipality, which, as a matter of course, it may not transcend; but our statute is directly to the contrary. There is not only no such limitation therein, but it expressly provides that the contract price, and not the estimated cost, shall be the basis for contracts, and that the "cost of such improvement shall not exceed to the property owner the amount of the contract entered into for the purpose of the work." True, the amendment to that effect was adopted after the notice of intention in question was published, but that amendment was really a protection to the property owners, since before it was adopted there was no express statutory limitation of the power to contract, and the only right the taxpayer had was to make application to recover back from the city in case he was required to pay any amount in excess of the actual cost of the improvement. That amendment being clearly for the taxpayer's benefit, we cannot see how he can complain. Indeed, respondent does not complain of the amendment. In comparing and consid-

ering the provisions of our statute with the statutes of those states from which the decisions have been cited, we think all will agree that there is a fundamental difference. True, the statute in force in the state of Washington, which was passed on by the Supreme Court of that state in the several cases referred to, does not differ so radically from our own as is the case generally. The Washington statute differs, however, in that no such notice to the taxpayer is required as is provided in section 265, *supra*. But the decisions of the Supreme Court of Washington hold, in the cases cited, that a failure to follow the estimate was not jurisdictional; but held that the municipality ought to be estopped from enforcing a tax against the property owner in excess of the amount stated in the estimate for the reason, as the court puts it, that it may have misled the taxpayer to his prejudice. Upon the legal effect of omitting to publish an estimate, the court, however, says:

"Since the Legislature might have dispensed with any estimate, the failure of the council to make any would doubtless be held an irregularity which might be waived by a failure to protest." *Collins* v. *City of Ellensburg*, 68 Wash. 221, 222 Pac. 1014.

Now, under the Washington statute, no opportunity was given to protest against the assessment and amount of the tax except by doing so in response to the notice containing the estimate. It is for that reason, among others, that the Washington court said the taxpayer might have been misled, in that he might have protested had he known that the assessment would exceed the estimate as published, whereas, if it did not exceed the estimate, he might have had no desire to protest.

That reason is also assigned by respondent's counsel in this case. A cursory examination, however, of our own statute, discloses that the contention cannot prevail. Under section 265, *supra*, respondent was required to be notified of the assessment and the amount of the proposed tax, and it is conceded that due notice in that regard was given him. How was it possible, therefore, for him, or any other taxpayer, to be misled with regard to the assessment or the amount of the tax? But, say counsel, under section 273, *supra*, the tax-

payers owning two-thirds of the front feet affected by the
proposed improvement could have defeated the same by filing
an objection to the making thereof. Now, they say, the tax-
payers may have been willing to pay the cost of the improve-
ment according to the estimate, while they may not have been
willing to pay for one which exceeded the estimated cost. That
may be so, but that is not the controlling question here. Tax-
payers, like all other persons, must take notice of and abide
by the law. Under the statute the estimate of the cost was
not the limit for which the city could enter into a contract to
construct the improvement in question, and therefore did
not constitute the limit of the assessment or amount of the
tax. Of that fact every taxpayer whose property was af-
fected by the improvement was bound to take notice. Again,
neither the assessment nor the tax was based upon the esti-
mate, nor had any relation thereto. Nor was it intended
that the taxpayer should assail either the fairness, validity, or
equality of the proposed assessment or tax upon the notice
of intention in which was included the estimated cost. To
enable the taxpayer to do that, the notice provided for in sec-
tion 265 was required to be given, and in this case was given.
That was the notice which was essential under the doctrine of
"due process of law." While therefore the publishing of
the estimated cost was also an essential prerequisite, yet the
fact that the estimate was too low, since one was published,
did not and could not destroy the jurisdiction which the stat-
ute conferred upon the appellant by complying with the pro-
visions of section 273, *supra*. By complying with the provi-
sions of that section, and the requisite number of abutting
property owners not having objected to the proposed im-
provement, appellant was clothed with full power and au-
thority to make the improvement and to assess and levy the
tax in question, and the mere fact that the estimate was too
low, in the absence of express statutory provision to the con-
trary, cannot take away that power or authority. While it is
now well established that in levying special taxes all juris-
dictional requirements must be strictly complied with, yet it
is equally well settled that all statutory requirements are not
jurisdictional, and that a departure from the latter consti-

tute irregularities merely which must be timely objected to by the taxpayer or they may be deemed waived. Courts may not add to the statutory requirements, nor have they the right to declare an act jurisdictional which is not made so by the statute. No doubt the imposing of a tax in excess of the estimated cost constitutes an irregularity for which a court might arrest the further proceedings of the municipality if a timely action were commenced, but to exceed the estimate, when all the provisions of our statute are considered, cannot deprive the municipality of jurisdiction. Under our statute the estimate is just what the term implies. Webster defines the term as:

"An approximate judgment or opinion as to weight, measure, cost and the like; a calculation without measuring or weighing."

As is well said by the Supreme Court of Wisconsin in *Shipman* v. *State,* 43 Wis. 389:

"A correct and accurate statement would be something more than an estimate; something essentially different from an estimate. That word precludes accuracy."

This every taxpayer was bound to know, and, in view that our statute did not make the estimate controlling, the courts may not do so. We are, however, not without authority upon this proposition. Judge Cooley, in referring to this subject, in 2 Cooley on Taxation, p. 1266, says:

"The assessment must, of course, be made upon an estimate which may be more or less incorrect, as all estimates for public works are likely to be; but the liability of error ought not to defeat a special tax any more than a general levy for future purposes."

To the same effect are *Davies* v. *City of Los Angeles,* 86 Cal. 47, 24 Pac. 771; *Hill* v. *Swingley,* 159 Mo. 45, 60 S. W. 114; *Auditor Gen.* v. *Chase,* 132 Mich. 630, 94 N. W. 178. The case of *Hill* v. *Swingley, supra,* is very much in point here. That case was decided by the Supreme Court of Missouri before the statute of Missouri was amended so as to prohibit the municipalities from entering into contracts in excess of the estimated cost of any improvement, and it was accordingly held that a tax in excess of the estimated cost was not void either in whole or only as to the excess.

We are of the opinion, therefore that the district court erred in holding that the estimate under our statute was jurisdictional, and that in levying the tax in excess of such estimate the appellant exceeded its power or jurisdiction, and that for that reason the amount of the tax in controversy here was invalid.

Appellant also contends that in view that it had jurisdiction to impose the tax in question, and that the proceedings culminating in the levy of the tax in excess of the estimate of the improvement were merely irregular, therefore respondent must also fail for the reason that he stood by and without objection permitted the improvement to be made and completed and likewise permitted appellant to pay the contractor the full contract price for the work. We considered that question fully in the recent case of *Stott* v. *Salt Lake City, supra.* The authorities are there collated and reviewed, and we shall do no more than to refer to that case and the authorities there cited. In view of that decision, this contention must also prevail.

Appellant's counsel, however, contend that there is still another reason why the judgment cannot prevail It is insisted that this action comes within the provisions of Comp. Laws 1907, section 2883, which provides:

"An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

Appellant, in its answer, set up that section as a defense. The only answer counsel for respondent attempted to make to the statute is that this is an action to remove a cloud from the title, or is one to quiet the title to real property. If it be held that this is merely an action to remove a cloud from the title or to quiet the title to real estate, then respondent's counsel have found an easy way to avoid the plea of the statute of limitations as to all actions in which the plaintiff's real estate or some lien thereon may either directly or indirectly be involved. In other words, every kind or character of affirmative relief may be prayed for and obtained by a plaintiff or counterclaimant if such relief in some way affects his rights in or title to his real estate. There can be no doubt

that this action was commenced for the purpose of invoking the aid of a court of equity to declare certain proceedings whereby a certain tax was assessed and levied against respondent's property void and of no effect and to annul said proceedings. True, the tax, if valid, constitutes a lien upon all of the property of respondent which abuts on and is benefited by the improvement. The validity of the tax, however, depends entirely upon whether the proceedings of appellant by which it undertook to assess and levy the same are legal or illegal. The relief that respondent sought by bringing the action was to have those proceedings declared illegal. Appellant at no time or place asserted title to respondent's property. Nor did it question in any way the soundness of his title. It made the assessment and levied the tax against respondent's property, and it should not be heard to say, in a proceeding of this kind, that the property is not his, or that his title thereto is defective. It is quite true that there are many authorities to the effect that an action to remove a cloud from, or one to quiet the title to, real property, is never barred. It is likewise true that many of the courts that so hold have in some cases, either carelessly or inadvertently, granted affirmative relief under the assumption that nothing was involved except to remove a cloud from or to quiet the title to real property.

Respondent's counsel, among other cases, have cited and strongly rely upon the case of *Cooper* v. *Rhea*, 82 Kan. 109, 107 Pac. 799, 29 L. R. A. (N. S.) 930 and the annotator's note to that case, 136 Am. St. Rep. 100, 20 Ann. Cas. 42. There is, however, no statute like section 2883, *supra*, in force in Kansas. See Gen. St. Kan. 1909, sections 5605-5617, inclusive. Such is also true of some of the other states from which cases are cited. There are, however, cases cited from states where a similar statute to ours (section 2883) is in force. *Meier* v. *Kelly*, 22 Or. 136, 29 Pac. 265, is such a case. Some of the cases referred to in the note in 29 L. R. A. (N. S.), *supra*, are also such cases, while others cited in the same note do not fairly come within that class. The case of *Payne* v. *Anderson*, 80 Neb. 216, 114 N. W. 148, is a case in point. While it is true that in the opinion in that case it is said

that many courts hold that the statute of limitations has no application to an action to remove a cloud, or to quiet the title, yet the decision is squarely based upon the fact that the case fell within the ten-year limitation statute, and not within the one which is like our section 2883, *supra*. The cases of *Peck* v. *Sexton*, 41 Iowa, 566, and *Smith* v. *Matthews*, 81 Cal. 120, 22 Pac. 409, also come within the latter class of cases. In the state of Indiana there is in force a statute similar to our section 2883, and the Supreme Court of that state has persistently and consistently held that the statute applies in every case where affirmative relief is sought, regardless of the consequences of the judgment which may be rendered. See *Caress* v. *Foster*, 62 Ind. 145; *Royse* v. *Turnbaugh*, 117 Ind. 539, 20 N. E. 485; *Stonehill* v. *Swartz*, 129 Ind. 310, 28 N. E. 620; and *Irey* v. *Markey*, 132 Ind. 546, 32 N. E. 309. Section 2883, *supra*, is a transcript of section 343 of the California Code of Civil Procedure. It has constantly been held by the Supreme Court of California that that statute applies to all actions for affirmative relief. See *Merguire* v. *O'Donnell*, 139 Cal. 6, 72 Pac. 337, 96 Am. St. Rep. 91; *Dore* v. *Thurnbaugh*, 90 Cal. 64, 27 Pac. 30, 25 Am. St. Rep. 100; *Barnes* v. *Glide*, 117 Cal. 1, 48 Pac. 804, 59 Am. St. Rep. 153; *Bates* v. *Gregory*, 89 Cal. 387, 26 Pac. 891; *Hecht* v. *Slaney*, 72 Cal. 363, 14 Pac. 88.

In all of the foregoing cases it is held that section 2883 applies to all actions, legal or equitable, where the plaintiff seeks affirmative relief. The Supreme Court of California, in common with many other courts, however, also holds that where no affirmative relief is sought, and the action is purely one to remove a cloud or to quiet the title, the statute of limitations has no application. *Smith* v. *Matthews* and *Peck* v. *Sexton*, *supra*, are typical cases in which all there was involved was to remove a cloud or to quiet the title. That so-called actions to remove a cloud or to quiet the title may be barred by the statute of limitations is clearly indicated by the annotator of the case of *Cooper* v. *Rhea*, *supra*, where, in the notes in 29 L. R. A. (N. S.) 932, the annotator says:

"There are also many cases concerning suits to quiet title or remove a cloud from title when the particular facts of the case cause

them to be governed by special statutes of limitations. These cases, of course, are not included in this note."

Now, it must seem clear, to all who have given or will give the matter any consideration whatever, that if section 2883 be denied application to a case like the one at bar, then the statute is practically repealed. That section applies to all actions for relief that is not otherwise covered by any other section. Where therefore affirmative relief is sought, as in this case, that section applies with full force. If that were not so, then all actions wherein it is sought to set aside any proceedings, judicial or otherwise, or any judgment of any court which may be a lien upon real property, may be prosecuted regardless of any statute of limitations. Although the respondent has, as a part of his prayer, asked to have removed the so-called cloud from his title, yet, as we have seen, the action was brought to annul certain proceedings, and respondent, so far as he could, attempted to make every person who was affected by those proceedings a party to the action. At least, he invited all of them to come into court and become parties and to help pay the expenses of the action and to share the benefits thereof. As to that it is sufficient to say that actions to remove clouds from or to quiet title are not generally brought for and on behalf of whole communities, while actions to annul certain tax proceedings are frequently brought by many or on behalf of many persons. We are very clearly of the opinion that, while actions by which nothing is sought except to remove a cloud from or to quiet the title to real property as against apparent or stale claims are not barred by the statute of limitations, yet we are also clear that all actions in which the principal purpose is to obtain some affirmative relief, as was the case here, clearly come within the provisions of section 2883, *supra*. Respondent's cause of action, if he had any, had therefore accrued when the proceedings complained of culminated in the making of the assessment and the levying of the tax in question and, that being nearly five years before the action was commenced, it was barred.

In view that the foregoing conclusions fully and permanent-

ly .dispose of this action, it is not necessary to consider the other defenses insisted upon by appellant's counsel.

The judgment is therefore reversed, and the cause is remanded to the district court of Salt Lake county, with directions to set aside its conclusions of law and judgment and to enter judgment dismissing the complaint upon merits. Costs to be taxed against respondent.

STRAUP, C. J., and McCARTY, J., concur.