THE STATE, OTTO KOHLER ET AL., PROSECUTORS, v. THE TOWN OF GUTTENBERG.

1. The legislature may cure, in municipal proceedings, the want of formalities which it need not have prescribed.
2. A preliminary estimate of the cost of a street improvement, made for the purpose of determining who is the lowest bidder, will not prevent the assessment of a larger actual cost, where the discrepancy is without fraud.
3. In such assessment, the cost of necessary surveying and improvement certificates, collection expenses and interest may be included.
4. The fact that a penalty to be incurred by the contractor for delay, has not been exacted from him, to reduce the cost of the improvement, will not invalidate the assessment, when it does not appear that such penalty could or ought to be enforced.
5. The mere fact that, in making the assessment, the commissioners have paid considerable regard to frontage, will not invalidate the assessment, if they have been guided by the principle of apportioning the expense according to the benefits.
6. Where the commissioners have failed to report that they have limited the burdens by the benefits, the court will examine the evidence, to determine whether they have done so, and if it appears they have not, the assessment will be set aside, although the reasons filed take no exception to the form of the report.
7. An assessment levied without giving the notices prescribed by the charter, will be set aside.

On *certiorari*.

Argued at February Term, 1876, before Justices DEPUE, KNAPP and DIXON.

For the prosecutors, *S. B. Ransom.*

For the defendant, *J. H. Lippincott.*

The opinion of the court was delivered by

DIXON, J.   The writs of *certiorari* in these causes bring up for review the proceedings had by the councilmen of the town of Guttenburg, and by the commissioners of assessment whom they appointed, with regard to the improvement of Hudson avenue, in said town.

Of the reasons relied on for reversal, the second, third and fourth relate to a change of grade in the street, made by the council after the inception of the proceedings, and without compliance with the statutory formalities.   As to these reasons, it is enough to say that the alteration is legalized by a supplement to the charter of the town, approved April 9th, 1875.   *Pamph. L.* 612.   The efficacy of such curative enactments is beyond question in this court.   *State, ex rel. Walter,* v. *Town of Union,* 4 *Vroom* 350 ; *State, Vreeland, pros.,* v. *Town of Bergen,* 5 *Ib.* 438.

The first reason assigned is based upon the facts that according to the calculation which the engineer made upon the basis of the contractor's prices, as applied to the estimated quantities of work, before the improvement was begun, the cost was to be $28,038.45, but at the close of the work the cost was found to be $35,854.13, which, with interest and the incidental expenses, raised the total amount assessed to $44,-002.41.   This preliminary estimate of cost was made for no other purpose than to enable the council to determine who was the lowest bidder, and the evidence indicates that its error arose chiefly from the fact that more rock was found at the grade than was anticipated, and therefore it became necessary to excavate, over a large portion of the street, to a depth eighteen inches lower than at first expected, in order to secure an earthy surface for the roadway.   Under these circumstances, and in the absence of any evidence of fraud, the municipality ought not to be estopped by such estimate, and precluded from imposing on those whose property was benefited, the real cost of the work, to the extent of their constitutional liability.

The fifth and sixth reasons do not appear to be true in fact.

The seventh, eighth, ninth, tenth and eleventh reasons are

aimed at including in the assessment an allowance to the engineer of several hundred dollars beyond the sum for which it is claimed he had agreed to perform the necessary surveying, an extra allowance of $50 to the town clerk for unusual services required of him for this improvement, and an allowance to the town treasurer of one per centum for collecting the assessment. It appears by the testimony that in the progress of this work, surveys were made by the engineer for the purpose of determining whether certain abutters were encroaching upon the line of the street, and that other services were rendered by him in connection with the improvement and assessment, which do not come fairly within the scope of the contract he had made for the stipulated price. The clerk had a salary of $100 a year, and the extra duty required of him was a considerable addition to his ordinary labors. So far as appears, the only official remuneration which the treasurer received was by a per centage upon his collections. The compensation of all these officers it was within the province of the councilmen to fix, and when their discretion has been honestly and reasonably exercised, this court should not interfere with it. The evidence does not disclose any ground for our intervention. These expenses are incidental to the work of improving the street, and so far as they have resulted in securing peculiar benefits to the land-owners, the land-owners must reimburse the municipality for them.

The twelfth reason for reversal is, that interest upon the certificates of indebtedness issued during the progress of the work, has been included in the amount assessed. Such interest was bargained for in the contract for the work, and therefore constituted a part of the cost, as clearly as did the principal of the price. The propriety of including a similar charge in the assessment was recognized by this court in *State, Baker, pros.*, v. *City of Elizabeth*, 8 *Vroom* 142.

The fifteenth and sixteenth reasons are not sustained by the testimony.

The seventeenth reason alleges as a ground for reversal, that by the contract the contractor was to incur a penalty of

$5.00 for each day the work should remain unfinished after January 1st, 1873; and that although his job was not completed until May 22d, 1874, yet this penalty was not exacted. It is, undoubtedly, the duty of the municipal authorities to enforce the rights of the public, and of the land-owners they represent against the contractor, and claim from him all proper deductions to lessen the expense of the work. But in order to contend successfully for such a penalty as this, the town would need to establish a clear case of fault upon his part. The proofs in this case, so far as they bear upon the question of delay, indicate that it arose from encroachments upon the street by the buildings of abutting owners. As early as May, 1872, the contractor formally requested the councilmen to cause such obstructions to be removed, so that he might work according to the surveyor's stakes; and as late as October 31st of that year, the council was still resolving that obstructions be removed. Then followed the winter with its delays, and on December 12th, 1873, the engineer in charge considered the contract performed. It is quite easy to believe that the councilmen, with these facts before them, could honestly conclude, in the exercise of a sound discretion, that the forfeiture ought not, either in law or common fairness, to be enforced.

The thirteenth and fourteenth reasons are, that the assessments upon the lands of the prosecutors have not been made in proportion to the benefits received, and largely exceed such benefits in amount. The improvement consisted of grading, curbing, flagging and guttering. For this an assessment of about $5.00 per foot of frontage has been imposed upon the lots of the prosecutors. The mere fact that in making the assessment, the commissioners have paid considerable regard to frontage, will not invalidate the assessment if they have been guided by the principle of apportioning the expense according to the benefits. It is their duty to consider, specifically, the advantage accruing to each plot, but on such consideration, they may judge that because of the uniform condition of the land, every foot of frontage is equally increased

in value. Upon such a conclusion, the frontage would, of course, fix the proportion of burden. The proofs in this case raise grave suspicions that the lands about this street are not of a character to admit of the application of such a rule, but they scarcely afford that preponderance of evidence which would justify the court in saying that the commissioners made a mistake of fact when they certified that they had assessed each lot in proportion to the benefit received by it. *State, Pudney, pros.,* v. *Village of Passaic,* 8 *Vroom* 65.

Upon the question of amount of benefit, however, there is scarcely room for doubt. The commissioners do not certify that they have limited the assessment by the benefits, and the court is prevented from setting aside their report for this defect only, because the reasons filed do not specify it. Neither the commissioners themselves, nor any one else, undertakes to say that the lands have been benefited by the improvement as much as they have been assessed for it, and all those who have sworn upon the subject, express the opinion that the benefit does not equal one-half of the burden. When this essential of a constitutional assessment is thus shown to be, in fact, absent, and the proceedings of the inferior tribunal fail to state, even in its judgment, it ever existed, the court will relieve the citizens from the burden so imposed.

The eighteenth reason is, that the assessment was made without notice to the prosecutors, and without allowing them to appear and be heard. The charter of the town provides that no assessment shall become final until after notice thereof shall have been published by the three assessors, by notice in writing set up in three of the most public places in said town, for the space of twenty days at least, and until the same shall have been confirmed by the councilmen, of the meeting of which said councilmen, like public notice shall be given, and to whom, at that time, any person aggrieved may appeal for relief. This provision contemplates the giving of two notices—the first, for a hearing before the commissioners of assessment, prior to their finally determining upon the assessment to be levied and reported, and the second, for a hearing

before the councilmen, prior to their conclusive adjudication. It, doubtless, also gives to the councilmen power to correct errors in the assessment, of which they may, by the complaint of those aggrieved, be satisfied, and imposes upon them the duty of so doing. The proceedings certified to us show that none of the rights, which this section of the charter secures, has been enjoyed by the property owners. The commissioners made their maps and report without any notice whatever to those interested, and presented it to the council January 21st, 1875. The council thereupon ordered the commissioners " to put up written notices, as according to law." Whether they did so or not, or to what purport such notices were, does not appear; but on March 2d, 1875, the council held a meeting, which the minutes style " a meeting for confirmation," at which several written protests against the confirmation of this assessment were read, and thereupon it was moved, and probably carried, that " the board resolve themselves into a committee of the whole, and examine the protests that have been handed in, and report March 9th, 1875." On March 5th, 1875, this committee of the whole met, and after, as the minutes say, carefully examining all the objections, resolved to report, " that we find nothing pertinent in the objections, and we also believe that we have no power to act in the matter, and, therefore, would recommend the confirming of the assessment." On March 9th, the day fixed for the report, we are informed simply that there was " no quorum." On March 15th, 1875, the council met, and heard read their own report, and forthwith confirmed the assessment. These proceedings do not merely fail to show that the requisite notices have been given, but they affirmatively show that every useful object of such notices has been frustrated. If the property owners were summoned to appear before any tribunal whatever, it was one which considered itself as being without power to act in the matter. A hearing before such a body is not a fair trial, and its conclusion upon the merits does not possess the essentials of a judgment.

The assessment, therefore, and the proceedings subsequent to it, must, as against the prosecutors, be set aside, and leave is given to the town to apply for the vacation of the whole assessment.