### AUDITOR GENERAL v. CHASE.

1. TAXES—SALE OF LANDS—OBJECTIONS—APPEAL.
   On an appeal from a decree directing the sale of lands for taxes, only such objections will be considered as were made on the hearing to enforce the tax.

2. PUBLIC IMPROVEMENTS—SPECIAL ASSESSMENTS—INTENTION OF COUNCIL—APPROPRIATION BILL.
   Where a charter provision requires the common council, before

levying a special assessment for an improvement costing more than $3,000, to set forth its intention in the preceding annual appropriation bill, the fact that an improvement costs more than was set forth in the appropriation bill does not render the tax void.

3. SAME—REPAVING—CHANGE OF GRADE.

Under a charter providing that, when a street shall have been graded and paved at the expense of the abutting property owners, such property owners shall not be liable to any special assessment occasioned by any subsequent change of grade in such pavement, unless such change is asked for by a majority of the lot owners, such property may be assessed for the expense of repaving without such request, though a slight change of grade is made, incidental to the kind of paving material used.

Appeal from Oakland; Smith, J. Submitted January 9, 1903. (Docket No. 28.) Decided April 7, 1903.

Petition by Perry F. Powers, auditor general, for the sale of land delinquent for taxes: On objections filed by Mary A. Chase. From a decree for petitioner, defendant appeals. Affirmed.

*H. M. Zimmermann* and *M. F. Lillis*, for petitioner.

*Patterson & Patterson*, for defendant.

MONTGOMERY, J. This is an appeal from a decree directing the sale of lands for taxes. The tax objected to was a tax imposed upon defendant's land for the paving of Saginaw street, in the city of Pontiac, in the year 1899. The objections set out in the pleadings are that the intention to make such pavement and expenditure was not set forth in the preceding annual appropriation bill; that no proper legal notice was given for a review of the special assessment; that the special assessments were not levied before the paving was commenced; that the change of grade and repaving of the street were not asked for by a majority of the owners of lots abutting on Saginaw street. These comprise the specific objections. In this court it is "

contended that the notice of the proposed pavement, and the district to be assessed, and of the time when the council would meet to hear objections, was insufficient. This is plainly not the objection stated in the pleadings. By section 13 of chapter 24, Act No. 215, Pub. Acts 1895, a notice is required of the meeting of the council and special assessors sitting as a board of review, which is the meeting referred to in the objection. No complaint appears to have been made as to the sufficiency of this notice. We have repeatedly held, of these proceedings, that only such objections as were made on the hearing to enforce the tax would be considered by this court. *Auditor General* v. *Maier*, 95 Mich. 127 (54 N. W. 640).

Section 16, chap. 30, Act No. 215, Pub. Acts 1895, as amended by Act No. 136, Pub. Acts 1899, provides that:

"No work or improvement to be paid by special assessment costing more than three thousand dollars shall be ordered commenced or contracted for, nor shall any assessment be levied therefor in any year, unless the intention to make such improvement or expenditure, and to defray the cost thereof by special assessment, was set forth in the last preceding annual appropriation bill: *Provided,* however, that this section shall not apply to any public improvement ordered by the council upon a petition of the owners of a majority of the lands liable to be assessed for the improvement."

In September, 1898, the annual appropriation bill did give notice of an intention to pave Saginaw street between Jackson street and Oakland avenue, at a cost estimated at $40,000. Subsequently the expense turned out to be some $70,000, of which the city assumed to pay something over $20,000, leaving nearly $50,000 to be raised by special assessment. It is contended that the council did not have jurisdiction to levy in excess of $40,000 in a special assessment for the purpose mentioned. We do not think this statute is susceptible of this construction. The fact that the council intended to enter upon the work is sufficiently set out in the annual appropriation bill, and the fact that it turned out later that the expense of the improve-

ment was greater than was anticipated does not make it necessary for the city to wait another year before entering upon the contemplated work.

The meritorious question presented by the case is whether the levy is void because the improvement was not petitioned for by a majority of the property owners on Saginaw street. The village of Pontiac was incorporated in 1842, and continued as a village until 1861, when incorporated as a city.   In 1855 the street in question was graded and paved. By the charter of the city of Pontiac, all rights belonging to the village of Pontiac, and all obligations, and all streets, alleys, rights, and privileges of said village, it is declared, shall be and remain, accrue, and belong to the city of Pontiac, so far as the same are not repugnant to this act. Section 6, chap. 22, Act No. 215, Pub. Acts 1895, provides that whenever any street, alley, or public highway shall have been graded, or pavement shall have been constructed in conformity to grades established by authority of the city, and the expense thereof shall have been assessed upon lots or lands bounded by or abutting upon such street, alley, or public highway, the owner or owners of such lots or lands shall not be subject to any special assessment occasioned by any subsequent change of grade in such pavement, street, alley, or public highway, unless such change be asked for by a majority of the owners of such lots or lands, but the expense of all improvements occasioned by such change of grade shall be chargeable to and paid by the city.   It is contended that, under this provision, the city had not the authority to assess this tax against the defendant, because it appears that the improvement was not petitioned for by a majority of the property owners.

It is perhaps fairly to be inferred from the testimony that the street was paved with cobblestones in 1855 at the expense of the abutting owners, and, if we assume that this provision applies to such paving as had been done by the abutting owners at this time, the question is whether the case falls within the provisions of this statute.   The power to pave and repave at the expense of adjacent pro-

prietors, and to replace an insufficient pavement with new, appears not to be questioned, except as it be limited or restricted by this charter provision. Was this an assessment *occasioned* by a subsequent change of grade in the pavement laid down in 1855, within the meaning of this act? We think not. The fair deduction from this record is that the pavement was deemed inadequate for present necessities and requirements; that it was deemed desirable to pave with asphalt. The action taken had reference to repaving. As an *incident* to such repaving, the actual grade, as it existed, was changed slightly, and in this way: With a cobblestone pavement, it appears that the crown of the street was higher than it need be with a smooth, asphalt pavement, so that in the center the street was cut down, and the sidewalk line raised somewhat. As to the change in the grade, the surveyor testified that the only change in the grade was to get an even graduation of the street; and that is true with reference both to the center of the street and the curb line. It is confusing terms to say that this assessment was occasioned by the change of grade in the pavement. The slight change which was made in the grade was occasioned by the fact of the improvement of the pavement. The case is very similar in principle to that of *O'Reilley* v. *Kingston*, 114 N. Y. 439 (21 N. E. 1004).

We construe this limitation of authority above quoted as precluding a repavement *made necessary* by the fact that the grade of the street had been changed in so substantial a way as to do away with the former pavement, as by a large cut or fill. That is not this case. It is manifest that the necessity of repavement was determined by the council without any thought of any substantial change in the grade. That followed upon the determination as necessary in view of the character of the pavement adopted. We think the statute does not limit the authority.

The decree of the circuit judge directing a sale of these lands for taxes will be affirmed.

The other Justices concurred.