CITY OF GREENSBORO v. SOUTHERN PAVING & CONSTRUCTION CO.

(Circuit Court of Appeals, Fourth Circuit. March 12, 1909.)

No. 868.

1. COURTS (§ 343*)—FEDERAL COURTS—STATE STATUTES.

The North Carolina statute expressly authorizing the prosecution of a suit by a pendente lite assignee of the demand in the name of the original plaintiff, his assignor, will be followed in the federal courts sitting in that state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 919; Dec. Dig. § 343.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. TRIAL (§ 3*)—SEPARATE TRIALS IN SAME CAUSE—MATTER OF ABATEMENT.

In a suit on a municipal paving contract, an objection that the suit was premature because the matter in difference between the city and the contractor had not been submitted to the arbitrament of the city engineer, and that the contractor had not furnished the city proper evidence that all claims for labor and material had been paid as required by the contract, was mere matter of abatement, as to which it was the city's duty to demand an independent trial prior to a submission of the case on the merits, and which the city waived by failing to do so.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 6; Dec. Dig. § 3.*]

3. MUNICIPAL CORPORATIONS (§ 365*)—PAVING CONTRACTS—PERFORMANCE—ACCEPTANCE BY ENGINEER—EFFECT—IMPROPER WORK—"APPROXIMATE ESTIMATE."

A contract for street paving required the work to be done as a whole, and not in sections, according to specifications under the direction of the city's engineer. The notice to bidders and specifications alone provided for payment on semimonthly estimates as the work progressed, with a retention of 10 per cent. on each "approximate estimate." The contract

---

also provided that the contractor should be responsible for any work until its completion and final acceptance, and that the acceptance should not relieve the contractor of any obligations to do reliable work previously described. *Held*, that the word "approximate" was tautologically used to accentuate the word "estimate," which was not to be construed as a final mathematical ascertainment of what was set forth, and hence the acceptance of sections of the work by the city engineer and issuance of approximate estimates thereon to the contractor did not bar the city's right to defend, when sued for the balance due under the contract, on the ground that the work in the sections estimated did not constitute a compliance with the specifications.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 898; Dec. Dig. § 365.*

For other definitions, see Words and Phrases, vol. 1, p. 477; vol. 3, pp. 2492–2493.]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Thomas J. Shaw and E. J. Justice (Shaw & Hines and Justice & Broadhurst, on the brief), for plaintiff in error.

Garland S. Ferguson, Jr., and John N. Wilson (William P. Bynum, Jr., and Merrick & Barnard, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge. The Southern Paving & Construction Company hereinafter designated the "contractor," brought its action at law in the court below against the city of Greensboro, N. C., hereinafter designated the "city," upon a street paving contract made between the Southern Contracting Company and said city, and subsequently assigned to and assumed by the said plaintiff company. By the terms of the contract the contractor was to furnish all necessary material and work required to grade and pave certain streets in the city in accordance with specifications annexed to the contract, and, further, in accordance with such plans and instructions as might, during the progress of the work, be furnished by the city's engineer. The provisions of the contract material to the controversy here were to the effect that the contractor should start the work at such point as the engineer should from time to time direct, and observe his directions as to the manner, completeness, and rate of progress of the execution of the work; that the contractor, by direction of the engineer, should remove and reconstruct at his own cost work found by the engineer not to have been done in accordance with the contract; that the city, through its engineer, should have right to make alterations in plans and grade lines before or after commencement of the work, and, if at extra cost, at a stipulated price; also to require the performance of extra work directed by the engineer in writing to be done, to be paid for upon an estimate of the engineer based upon the contract price; that the engineer's decision should be final in constructing the plans and specifications; and "to prevent all disputes and altercations" the city engineer was to—

"be referee in all cases and determine the amount, quality, acceptability and fitness of the several kinds of work * * * and to decide all questions

which may be raised relative to the fulfillment of the contract by the contractor, that his estimates and decisions shall be final and conclusive, and that such estimates or decisions in case any question shall arise, shall be a condition precedent to the right of the contractor to receive any money under this agreement."

It was further provided:

"The contractor further agrees to be responsible for any work until its completion and final acceptance, and it is fully understood by the contractor that the acceptance of the work will not relieve him of any obligations to do reliable work as hereinbefore prescribed, and that any omission and disproof of any work by the said engineer at or before the time of the monthly or other estimate shall not be construed to be an acceptance of any defective work, and that no acceptance whether final or otherwise, will relieve the said contractor or sureties on his bond from any of its obligations under the guaranteeing the said work for three years."

It was provided, in the "Notice to Bidders and Specifications," among other things, "Approximate estimates shall be made and payment given semimonthly. Ten per cent. of each approximate estimate shall be retained by the city until the completion of the work," that "in case of any disagreement or dispute as to the true meaning of any point in the specifications, or as to the character of any part of the work, the decision of the city engineer shall be final and binding upon all the parties," and that "before the final acceptance of the work, and payment of the balance due, the contractor shall furnish to the city proper evidence that all claims for labor and material have been paid, and that no legal claims can be filed against the city for such labor and material.".

The contractor's complaint charged full and complete performance of the contract on its part under the direction and with the approval of the city's engineer, and that after allowance of all payments, admitted and set forth, there was still due contractor, for contract work and extras, $12,981.69.

The answer of the city substantially sets up four defenses to this claim: First. That the plaintiff had no right to sue, because it had assigned its claim to another, and had no real interest, therefore, in the demand. Second. The contract providing that all questions arising "as to the amount, quality, acceptability, fitness or final completion of the work" should be passed upon by the city engineer, and his decision should be final and a condition precedent to the contractor's right to receive any money thereunder, it is charged that before institution of the suit and after alleged completion of the work certain questions were raised by the city as to the character of the work done, fully set forth, which questions were not submitted to the engineer, were not passed upon by him, and that therefore the contractor's action was prematurely brought and should be dismissed. Third. That the contractor did not, prior to the institution of his action, furnish it with "proper evidence that all claims for labor and material have been paid and that no legal claims can be filed against the city for such labor and material" as provided by the contract to be a condition precedent to the payment of balance due him, and therefore his action should be dismissed as prematurely brought. Fourth. That, contrary to the requirements of the contract and the "notice to bidders and specifica-

tions," (1) the soft and boggy places in the subgrade were not filled with broken stone, or other hard material, and rolled and compacted. (2) That in preparing the concrete for the concrete base, instead of using the proportions of cement, sand, and stone as provided, said defendant in error used one part cement to five or six of sand to twelve or fifteen of stone, causing the said concrete base to be weak and of comparatively little value. (3) That said concrete base as constructed was less than four inches in thickness instead of five as provided. (4) That the brick used were not up to specifications, many of them being too soft, not having parallel sides and straight edges, and were not uniform in texture and appearance. (5) That the filler was improperly placed in the joints of said brick. (6) That the stone and sand used in said concrete were not kept free from dirt. (7) That in many places brickbats were used in lieu of bricks in laying said pavement. (8) That many of the brick used were chipped or broken. (9) That special rail brick were not laid along street car tracks. (10) That many of the brick laid along the car tracks were so placed as to stand higher than the surface of the street, making the same uneven and rough. That, in consequence, the contractor has failed to comply with its contract, but has constructed a pavement much inferior and worth much less than the contract price. That this was accomplished by the misrepresentations and fraudulent acts of the contractor fully set forth, whereby the city engineer was deceived as to the quality of such work and was misled into making approximate estimates, eight in all, of the work done, seven of which were paid by the city. At this point it may be proper to state, although it is but incidentally referred to in this pleading, that it is shown elsewhere in the record and conceded that, after these seven estimates had been paid and after the eighth had been given, but before its payment, two citizens of the city, as taxpayers, secured from a state court an injunction against the city forbidding it to pay any further sums to the contractor by reason of the defective character of the work as indicated, and no other estimates of any kind were thereafter made by the engineer and no further payments were made by the city. This injunction was afterwards dissolved upon demurrer, and such decree of dissolution was affirmed by the Supreme Court of North Carolina. See Merrimon v. Paving Co., 142 N. C. 539, 55 S. E. 366, 8 L. R. A. (N. S.) 574.

For the reasons set forth, and because of the fraud of the contractor and the gross mistake of the engineer induced by the deception of the contractor, it is charged that the city has been damaged to the extent of $12,000. Subsequently an amended answer was permitted to be filed charging alternately such defective work to have been suffered either by reason of the gross mistake of the engineer misled by the misrepresentation and deceitful acts and conduct of the contractor, or by the direct participation by its engineer in the fraud perpetrated by the contractor. The contractor in his reply denied the charges both of bad work done and of fraud.

Upon the trial of the case below the city sought to introduce testimony to prove the allegations of its fourth ground of defense, but the learned judge presiding ruled that the "work was done, practically in sections, not any particular amount of yards or extent of work in any

particular section, but from time to time at certain points or periods the city engineer made his estimates and certified to the city for payment the purchase price, less 10 per cent., which was for work performed, the amount being reserved by the city under contract." And thereupon he held that, as to all the work included in the seven estimates certified by the engineer to the city and paid, such certificates were final and binding upon the city as to the character, quality, and amount of such work done, only impeachable for fraud or gross mistake.

As substantially all the alleged defective work was done prior to the suing out of the citizens' injunction and was covered by these seven estimates, this ruling in effect cut off all defense by the city as to the merits of the controversy, and resulted in a verdict and judgment in favor of the contractor for substantially the full amount claimed by him.

Considering now the four defenses relied upon by the city, the first, to the effect that the contractor had assigned his claim to Montague and had no substantial interest in the suit, can be quickly disposed of. It is conceded that the assignment relied upon was a pendente lite one. This being so, the statute of North Carolina expressly authorizes the prosecution of a suit by a pendente lite assignee of the demand in the name of the original plaintiff, his assignor. It is needless to say that under federal statute the rule of practice established by this state statute will prevail here. The court below did not err in overruling this defense.

The second defense, to the effect that matters in difference existing between the city and the contractor were not, prior to the institution of the suit, submitted to the arbitrament of the engineer, as required by the contract, and the third defense, to the effect that the contractor did not, prior to the institution of his action, furnish the city with "proper evidence that all claims for labor and material have been paid, and that no legal claims can be filed against the city for such labor and materials," both present matters of abatement of the suit, and not matters in bar of the plaintiff's right. These matters in abatement were presented with others in bar by the same answer. Without objection on the part of the city, so far as the record discloses, these issues, both in abatement and bar, were submitted to and tried by the same jury at the same time and found against it. This court has said in Kirven v. Virginia-Carolina Chemical Company, 145 Fed. 288, at page 291, 76 C. C. A. 172, at page 175:

"While we, therefore, find no error in fact in the determination of this question of jurisdiction, we feel constrained to say that it is always error to submit an issue of fact as to jurisdiction, with other issues, to a jury and permit it to be determined, with such other issues, by a general verdict for or against the plaintiff. Lack of jurisdiction is a defense in abatement of the prosecution of the action, and not in bar of the right of action itself. In common-law pleading it must, at the earliest moment, be raised by plea in abatement, made in person and not by counsel, and, if to the writ, must give the defendant the better writ, and, if to the court, must indicate the court having jurisdiction. The issue upon such plea, if the matter be of law, must be determined by the court, but, if of fact, may be submitted to a jury. In either case the trial of this issue must be an independent one, for the plain and obvious reason that the judgment upon it, if effective, cannot be a bar to the plaintiff's right, but simply one of dismissal without prejudice.

"Prior to the act of 1875, the common-law rules touching the necessity of a plea in abatement to the jurisdiction prevailed in the federal courts, and it was held that the filing of a plea to the merits was a waiver of such plea to the jurisdiction. Farmington v. Pillsbury, 114 U. S. 138, 143, 5 Sup. Ct. 807, 29 L. Ed. 114. It has since been held that, 'in its general scope, this rule has not been altered by the act of 1875,' but that this act 'changed the rule so far as to allow the court at any time, without plea and without motion, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered.' Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 29 L. Ed. 725; Williams v. Nottawa, 104 U. S. 209, 211, 26 L. Ed. 719. Thus while in practical effect this act of 1875 has extended the right of the court to settle the question of its own jurisdiction, and, to an extent, limited the right of a jury to pass upon the question when one of fact, it has by no means, when such question is submitted to a jury, destroyed the original methods by which it should be so submitted; and especially, under no form of pleadings, has it done away with the requirement that it shall be tried as an independent issue. This is true simply because the absolute necessity for it being so tried remains. As stated in Ashley v. Board, 60 Fed. 55, 68, 8 C. C. A. 468: 'It is clear that such a question is an independent one, and cannot be properly confused with the issue on the merits; otherwise, it could not be determined from the verdict whether it was founded on a question of jurisdiction or of the cause of action.'"

In this case the matters set up in these defenses could only abate the action, and dismiss it without prejudice to any second action brought by the contractor, after he had complied with the requirements of the contract and submitted the matters in difference to the engineer, and had furnished the required evidence to the city that the material and labor claims had been satisfied and no legal claims could be presented against the city because of the work done. The city had a right to demand an independent trial and settlement of these matters before the cause was tried upon its merits. If it desired to rely upon these defenses, it was its plain duty to demand such independent ascertainment of them. It did not do so, but it, in effect, sought the advantage of having them, if possible, secure for it a final judgment where it would have been entitled by reason of them to only a restricted one of dismissal without prejudice, and this by allowing them to be tried with other matters in bar by the same jury. Under the plain principles above set forth, it must be held to have waived these defenses in abatement, the court below could have excluded all evidence touching them upon the trial actually had, and it will therefore not be allowed to rely here upon the failure of them in the court below as ground of error.

This brings us to the last question involved, which may be stated briefly to be, did the court below err in ruling the estimates of the engineer of work done certified to and paid by the city to be final and conclusive upon the parties, only to be, by independent action on the part of the city, impeached for fraud? We think he did. His opinion was that the work "was done in sections" under the direction of the engineer, and that, this being so, these estimates of work done were final and conclusive as to such "sections" set forth. In this view the court below erred, because (a) the contract did not provide for the work to be done in sections, but (b) did provide for it to be done as a whole, and, finally, (c) because the plaintiff's complaint was based wholly upon the contract as a whole, alleging it to be such. The "notice to bidders and specifications" alone provided for these estimates to be made semi-

monthly for partial payment of work done. It was nowhere provided that they were to be for completed work alone. If the engineer had so directed, the whole of the concrete base could have been required to be laid before a brick was placed. This might have required more than three-fourths of the whole time required to do the work. Had he done so, the contractor would have, nevertheless, been entitled to his semimonthly estimate upon the work done by him. These estimates are designated in the specifications as "approximate estimates." It is true the use of the word "approximate" in this connection is in a sense tautological, but it is very frequently used in these contracts, manifestly for the purpose of accentuating the fact that the other word "estimate" is not to be construed as a final mathematical ascertainment of what it sets forth. The contract expressly provides that "the contractor further agrees to be responsible for any work until its completion and final acceptance, and it is fully understood by the contractor that the acceptance of the work will not relieve him of any obligations to do reliable work as hereinbefore described."

The legal principle touching the effect of these estimates provided for, given and paid during the progress of contract work, have been correctly determined and set forth by this court in Freygang et al. v. Vera Cruz & P. R. R. Co., 154 Fed. 640, 83 C. C. A. 414, where it is held that they are prima facie evidence of the work done, but subject to correction, contradiction, or impeachment for error, mistake, omission, or concealment. This principle has been affirmed by this court in the case of Jefferson Hotel Company v. Brumbaugh (decided at this term) 168 Fed. 867, and is in accord with the ruling in Mercantile Trust Company v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811.

It follows that the judgment of the court below must be reversed, the verdict of the jury set aside, and a new trial awarded.

Reversed.