FRANK S. SMITH *v.* CITY OF PARKERSBURG *et al.*

(No. 9365)

Submitted February 2, 1943. Decided March 2, 1943.

416

*Ambler, McCluer & Davis,* for appellant.

*Richard C. Moore, H. W. Russell* and *Wm. Bruce Hoff,* for appellees.

*Wright Hugus* and *Robert S. Spilman,* for Parkersburg Iron & Steel Co., *amicus curiae.*

KENNA, JUDGE:

This proceeding was instituted in the Circuit Court of Wood County by Frank S. Smith against the City of Parkersburg, its mayor, and the four members of its City Council for the sole purpose of enjoining the municipal authorities of that city from issuing municipal bonds under the authority conferred upon municipalities by Chapter 68 of the Acts of the Legislature of 1935.

The bill of complaint was filed on the second day of October, 1940, the trial chancellor taking time to consider until October 14th, when the parties appeared before him and the defendants tendered their demurrer to the bill of complaint, which was then filed. On November 8, 1940, the demurrer to the bill of complaint was overruled, and, without awarding a temporary injunction in response to the prayer of the bill, the trial chancellor certified the questions of law thus passed upon by him to this Court, where two motions to docket the certification were declined, and an order disclosing that state of the record was entered in the Circuit Court on December 14, 1940. On February 28, 1941, the parties appeared, the complainant seeking an injunction as on a bill of complaint taken for confessed, and the defendants requesting that they be granted additional time within which to file an answer under Code, 56-4-56, both courses being opposed.

The trial chancellor, not having acted upon the defendants' request to extend their time within which to file an answer, on the 11th day of March, 1941, entered an order awarding a temporary injunction. Following the entry of the order awarding the temporary injunction, the then incumbent of the circuit bench resigned and his successor was appointed.

Over the objection of the complainant, an order was entered filing the answer of the defendants on April 16, 1941, proof was taken, and upon final submission an order was entered on the 23rd day of October, 1941, dissolving the injunction formerly awarded and dismissing complainant's bill of complaint. From that order this appeal was granted upon the complainant's application.

The purpose for which it is intended by the City of Parkersburg to issue municipal bonds is to defray the cost of the sponsor's contribution to what has become commonly known as "The Parkersburg Flood Wall Project." That being so, a number of the questions of law involved are not matters of first impression in this Court, but were dealt with in the case of *The Duling Brothers Company et al. v. The City of Huntington,* 120 W. Va. 85, 196 S. E.

552, to which we wish generally to refer at this time, not of course, in disregard of the specific references that will be made later.

The question to be disposed of before we reach the substantive law involved in the determination of this matter, is a question of procedure affecting the right of the defendants to answer more than fifteen days after their demurrer to the bill of complaint had been overruled, or after the order of this Court declining to docket the certification on its second application had been entered of record in the Circuit Court of Wood County, the complainant contending that the provisions of Code, 56-4-56, should operate, not from the time that the demurrer is acted upon in the circuit court and the order of certification entered, but from the time that the order of this Court declining a final motion to docket is entered of record in the trial tribunal. In meeting that contention, the defendants, among other points advanced, say, (a) that the trial chancellor should have the right and power to enlarge the period of fifteen days expressly granted by Code, 56-4-56, during which an answer can be filed after a demurrer is overruled, after the original period of fifteen days has expired, in spite of the first syllabus in the recent case of *Barnes* v. *Warth,* 124 W. Va. 773, 22 S. E. 2d 547; (b) that the rule laid down by the terms of the statute referred to as applied in the *Barnes* case does not relate to pure injunction proceedings, that being a remedy addressed well nigh exclusively to the sound discretion of the trial chancellor and controlled by special statutory provisions which, as they state it, among other things, accord to the defendants the right to file an answer upon entering a motion to dissolve; and (c) that the language of the statute in question cannot be made to conform to the unavoidable procedure in certified cases where the questions certified have been developed by overruling a demurrer to a primary pleading, that being the state of a large percentage of certified cases, and that therefore it was the legislative purpose not to apply the terms of that section to cases other than those regularly matured

and regularly submitted, excluding cases in which certification would, of necessity, cause an hiatus in the continuity of their development in the trial court. The complainant and defendants apparently agree that the unqualified terms of Code, 56-4-56, cannot be applied to certified cases. The complainant wishes it applied by commencing the fifteen-day period, not when the demurrer is overruled as the statute expressly provides, but at an indefinite date not controlled by statute, but to be fixed at one time if only one application for docketing is made, at another time if two or more applications are made, at another time if the application is not docketed, and at still another time if the case is docketed and heard by the appellate court.

Our conclusion makes it unnecessary to discuss the construction of Code, 56-4-56, placed thereon by the *Barnes* case, because we are of the opinion that it does not apply after certification to an appellate court has taken place, as here. However, we do wish to say in passing that we have reconsidered the rule of procedure established by the syllabus in the *Barnes* case to the effect that the fifteen-day period cannot be extended after its end, and see no reason for altering its effect.

It is strongly urged by the appellees that, in a chancery proceeding where the sole relief sought is an injunction, the bill of complaint being what is ordinarily referred to as a pure injunction bill, since the prayer for injunctive relief is addressed largely to the sound discretion of the trial chancellor, and since the filing of an answer may synchronize with a motion to dissolve, the statutory provisions in question are necessarily foreign to that form of relief, which is looked upon as an extraordinary remedy. No injunction order was presented for entry until sometime after the expiration of fifteen days following this Court's second refusal to docket. When presented, complainant objected to the filing of an answer.

We do not agree that pure injunctive relief has sufficient similarity to an extraordinary remedy to justify its being treated as such. Injunctions are instruments by

which, when necessary, our chancery courts enforce their remedial and preventive decrees, and were evolved for the purpose of speeding effective relief. While its very nature requires severe regulation based upon a comparatively plain showing, we think that speed is of its essence, and, therefore, a statute, the obvious purpose of which is to promote the prompt development and submission of issues to our trial courts, cannot be said by implication to exclude pure injunction cases.

On the other hand, we believe that the plain purpose of Code, 56-4-56, is to promote the uninterrupted development of legal controversies before our trial tribunals in a systematized manner, and that it was not intended by the Legislature that its provisions should relate to litigation in which a standardized development of the issues involved in point of time had been made impossible by the certification of all, or a part of, the legal questions involved to an appellate court for decision. Under Code, 58-5-2, upon certification of questions from a circuit court to this Court, all further proceedings in the case are stayed "until such questions shall have been decided and the decisions thereof certified back." It will be noted that proceedings in the cases are stayed, not the operation of Code, 56-4-56, limiting the time to file an answer to fifteen days after demurrer overruled. There is no time limit set by statute directly relating to certification, governing the motion to docket a certified case in this Court, or the number of times that motion may be made. A motion to docket a certified case may be considered by this Court for variant lengths of time, depending upon the complications of the questions certified, the size of the record, and various other factors. In the case at bar, there were two motions to docket the questions certified by the circuit judge, and both were declined after considerable deliberation. If this Court had docketed the questions certified, it would have been difficult to determine in advance how long the case would rest here with the Circuit Court of Wood County deprived of all power to proceed. In the meantime, the trial court's order overruling the

demurrer had been entered, and under the express language of Code, 56-4-56, the fifteen-day period during which an answer is required to be filed had expired. If the date upon which the demurrer is overruled does not mark the commencement of the period, this Court would be compelled arbitrarily, directly or indirectly, to fix that time in order to make the act applicable to certified cases.

The remaining assignments of error are summarized as follows in the appellant's brief:

"(a) That no notice, such as is provided by the Statute, was given.

(b) That they contain no estimate of the complete cost of the project, a requirement made mandatory by the Statute.

(c) That they are vague and indefinite and show that the completion of the work is contingent upon further action by the Federal Government which may never be taken.

(d) Because the Ordinances as passed, contemplate the laying of assessments against state, county, school and other properties when such assessments cannot be legally laid or collected.

(e) Because the Ordinances provided for charges against property which cannot conceivably be benefited by the erection of the proposed flood wall.

(f) Because the Ordinances show on their face that the charges proposed to be made are unfair and inequitable and are not based on any consideration of benefits which might be derived by the property so charged.

3. Finally, it has been conclusively shown by the evidence that such a flood wall as is contemplated by the Ordinances to be built, is not necessary at Parkersburg; that the proposition is not economically sound and that its construction is strenuously opposed by the property owners who would supposedly be benefited thereby."

The assignments will be dealt with according to their designation by the appellant.

(a) A careful examination of the rather complicated and lengthy bill of complaint which, together with ex-

hibits, occupies ninety pages of the printed record before us, seems to justify the conclusion that it contains no allegations as a consequence of which the lack of notice, if shown, could be relied upon as a ground of relief. That being so, it is unnecessary to discuss that assignment further.

(b) As we understand this assignment, it is based upon the difference between the entire cost of the whole project, of which the ordinances contain no estimate, and the cost to the city as sponsor which the ordinance did state in figures, it being contended by appellant that the require-ment of the act that the ordinance shall "(b) set forth the estimated cost thereof", refers to the entire cost, and that consequently the method here followed was a non-compliance with the terms of the act. The consequence of that method of construction would be that there is no provision of the act requiring the cost to the municipality to be stated in the ordinance. The ordinance would have to state the entire cost only, that being, in this instance, approximately ten times the amount of money required, as a contribution, of the City of Parkersburg. The purpose of the ordinances required by the act is plainly to inform the residents and taxpayers of the municipalities con-cerned as to the outlay by them, and the expected returns from the special assessment to be laid pursuant to the provisions of the act. In this case, the construction urged by complainant would result in eliminating from the ordinance the statement of the cost to the city, by which the property owner is materially affected, and in including a figure that has no direct bearing upon the amount potentially required to be paid by him. We are of the opinion that the ordinance which contained a statement of the estimated cost to the City of Parkersburg was a compliance with this provision.

(c) The statement that the ordinances are vague and indefinite is a general assignment again not based upon any material allegations in the bill of complaint, and the assignment that the completion of the work is contingent upon further action by the Federal Government, although

in the abstract its accuracy probably cannot be challenged, yet it is based upon a theory which, from a practical standpoint, we regard as thoroughly unsound. The entire cost of the project in round numbers is estimated at three million dollars. The record shows that it will take in the neighborhood of two years and a half to construct. A full compliance with the Federal Government's undertaking would require it to appropriate and make immediately available two million, seven hundred thousand dollars, cash. On the basis of the data before us, it may be assumed that one-thirtieth of that sum would be expended monthly. The remaining amount would lie idle, a consequence to be avoided, of course, wherever possible. Therefore, under the Federal Government's fiscal plan, direct appropriations are not made to cover the cost of river improvements. Such sums are made available to the Secretary of War for general stated purposes, to be allotted by him, from time to time, and as necessity requires, to projects under construction or definitely adopted. At the time the testimony shown in the record before us was taken, the Secretary of War had allotted to Parkersburg Flood Wall Project the sum of one hundred thousand dollars for the purpose of surveying, planning and collecting the necessary data to furnish the foundation of that enterprise. Of that sum, fifty-four thousand dollars had been expended. Later, the Secretary of War had allotted to the Parkersburg project a sum sufficient to make the total allotment equal more than half of the Federal Government's contribution. We are of the opinion that this course of conduct constituted a sufficiently definite commitment of the Federal Government for the city council of the City of Parkersburg to act upon.

(d) We see no reason why the enforceability of the assessment as against the property of state, county and other governmental units should affect the legality of the assessment as a whole. We think that the proposition advanced in this sub-paragraph was fully dealt with by us in the case of *The Duling Brothers Company* v. *Huntington*, 120 W. Va. 85, 86, 196 S. E. 552.

(e) In the absence of capriciousness or of an arbitrary distinction drawn in the laying of assessments, we see no reason to consider the degree of benefits to be received by the property assessed as affecting the validity of the assessment as such. On the basis of comparison, the benefits derived by various parcels of land are never identical as is illustrated by the full proof in the record before us, but that difference characterizes practically all systems of taxation, as does the manner, the extent and the question of when, the tax assessment will impede the development of the taxing unit responsible for laying them. But this is a matter we think resting almost entirely in the exercise of a sound discretion by the municipal authorities, and while the zoning of the area of the City of Parkersburg sought to be affected, and the laying of an assessment of thirty-two and one-half cents on each one hundred dollars of assessed valuation in zone one, twenty-two and one-half cents on that valuation in zone two, and ten cents in zone three is undoubtedly heavy, we cannot say from the showing made in this record that the property assessed will not be appropriately compensated.

While in the *Duling Brothers Company* case, the zoning plan adopted was in many ways similar to that now before us, the assessments laid upon the zoned property were decidedly more limited in amount. However, we discussed in that opinion the question of discrimination and confiscation, and concluded that neither was there shown. We have reached the same conclusion in this matter, and regret that the limits of a written opinion do not permit us to discuss fully the detailed reasons for our decision.

(f) The reasons stated in this assignment, we think, have been sufficiently discussed under assignment (e).

Under main assignment three, we can only say that on the showing before us in this case, we regard the subject matter covered by this assignment as resting mainly upon expert opinion, as does the interpretation of the statistical data introduced and depended upon by the complainant. The plainly outstanding expert witness among the persons whose testimony is included in this record, we believe to

be Major S. H. Falkner of the Corps of Engineers of the United States Army, acting as the district engineer in charge of the Huntington District of the Engineering Department at large, which includes Parkersburg and the surrounding territory on the Ohio River. Major Falkner distinctly states the conclusions reached by the Army Corps of Engineers as well as the main reasons underlying those conclusions. He answers fully the contention advanced by complainant to the effect that the control of the upper tributaries of the Ohio River will solve the flood problem confronting Parkersburg, the problem itself being tacitly admitted by the complainant. Major Falkner was in charge of the planning and construction of the Huntington flood wall, and states what we believe is shown of record in this Court, that the plans of the Parkersburg and Huntington flood wall projects are similar in all respects. Both, of course, were approved by the Corps of Engineers of the United States Army. No experienced expert in flood prevention, in so far as it shown by this record, disagreed.

Upon the basis of the plain showing required to justify either a temporary or a permanent injunction, there is some doubt as to the sufficiency of the allegations of the bill of complaint, and whether it was error to overrule the demurrer thereto. However, due perhaps largely to the public interest involved, this Court feels that it is decidedly preferable to consider the matter on its merits and to pass upon the issues created by the whole record, and thus, if possible, end a controversy the continuance of which, unsettled as to the merits, would benefit no one.

Predicated upon the foregoing discussion, the decree of the Circuit Court of Wood County dissolving the injunction and dismissing the complainant's bill of complaint is affirmed.

*Affirmed.*