MICHAEL S. KOICH, PLAINTIFF AND APPELLANT, v. CITY OF HELENA, ET AL., DEFENDANTS AND RESPONDENTS.

No. 9837.

Submitted August 9, 1957. Decided September 20, 1957.

315 Pac. (2d) 811.

Messrs. Skedd, Harris & Massman, Helena for appellant.

Mr. Michael G. Chilton, City Atty., Helena, for respondent.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a judgment of the district court of the first judicial district of the State of Montana, in and for the County of Lewis and Clark, wherein injunctive relief was denied to plaintiff and appellant, and declaratory relief was granted to defendants and respondents, hereafter called the city.

Plaintiff seeks to enjoin the city from proceeding with Special Improvement District No. 202, and seeks a declaratory judgment declaring the proposed action of respondent city to be illegal and without authority.

The city passed a resolution of intention pursuant to section 11-2204, R.C.M. 1947, to create a special improvement district in a certain part of the city. In this resolution of intention it stated that the estimate of the cost of such improvements would be $212,000; $186,000 of that amount was allocated to the estimated cost of the project, and the other $26,000 was allocable to the cost of engineering, inspection, etc., under section 11-2228, R.C.M. 1947. The city then published notice of the resolution of intention under section 11-2207, R.C.M. 1947, and also complied with the provisions of the statutes with reference to inviting bids for the performance of the work and with reference to inviting bids for the purchase of bonds to finance the improvements. R.C.M. 1947, sections 11-2209 and 11-2231 to 11-2232.

It is at this point that the controversy arose. As was stated above the estimate of the cost in the resolution of intention was stated to be $212,000. However upon submission of the bids the lowest proposal for the construction work was in the sum of $199,674.97. Upon submission of this bid the city then revised

their estimate of costs under section 11-2228 to the sum of $28,325.03, making a total revised estimate of the cost of the district in the sum of $228,000, rather than the original $212,000.

Plaintiff and the other taxpayers within the district have had no formal notice of the revised estimate of costs. The city fully intended to proceed to let the contract for the performance of the work, sell bonds to cover the entire revised cost thereof, and to assess the entire cost of said improvements against plaintiff and the other taxpayers within the special improvement district.

The plaintiff contends that the revised estimate of the special improvements will exceed the approximate estimate contained in the resolution of intention by such a substantial amount, approximately 7½ percent, that the city has wholly failed to comply with the statutory requirements for giving notice; that it is without authority to proceed; and that to permit the city to proceed would deprive plaintiff and other taxpayers of property without due process of law. By reason of the fact that the city seeks to rush the special improvements through to completion while hot weather will permit the paving of the streets, plaintiff contends he is without adequate remedy except by injunctive or declaratory relief.

The case was submitted by the respective parties to the trial court upon an agreed statement of the facts. The trial court thereupon denied plaintiff any relief, and granted the prayer of the city for declaratory judgment on the ground that there was a substantial compliance. From this judgment the plaintiff has appealed.

The sole issue to be determined upon this appeal is: What did the legislature mean when it required the city to recite in their resolution of intention the "approximate estimate" of the cost of the improvements.

R.C.M. 1947, section 11-2204, reads in part:

"(1) Before creating any special improvement district for the purpose of making any of the improvements, or acquiring any private property for any purpose authorized by this act,

the city council shall pass a resolution of intention so to do, which resolution shall designate * * * an approximate estimate of the cost thereof; * * *

"(2) Upon having passed such resolution the council must give notice of the passage of such resolution of intention, which notice must be published for five days in a daily newspaper, or in some one issue of a weekly paper published in the city or town, or in case no newspaper be published in such city, then by posting for five days in three public places in the city or town, and a copy of such notice shall be mailed to every person, firm, or corporation, or the agent of such person, firm or corporation having property within the proposed district at his last known address, upon the same day such notice is first published or posted. Such notice must describe the general character of the improvements or the improvements so proposed to be made, and state the estimated cost thereof, and designate the time when and the place where the council will hear and pass upon all protests that may be made against the making of such improvements, or the creation of such district; and said notice shall refer to the resolution on file in the office of the city clerk for the description of the boundaries."

Before deciding just what the legislature meant by the words "approximate estimate," it would be well to go into the general intent and purpose of section 11-2204. It would seem that from the language and holdings of the following cases that the essential purpose of a resolution of intention is to: (1) apprise the taxpayers that the city intends to propose a special improvement district; (2) what area will be encompassed in the district; (3) what type and character of improvements will be included within the district; and (4) the cost of the improvements to be made. See Evans v. City of Helena, 60 Mont. 577, 588, 199 Pac. 445; Johnston v. City of Hardin, 55 Mont. 574, 179 Pac. 824; Shapard v. City of Missoula, 49 Mont. 269, 141 Pac. 544; City of Lewistown v. Warr, 52 Mont. 353, 157 Pac. 953; Cooper v. City of Bozeman, 54 Mont. 277, 169 Pac. 801. Actually notification is the prime purpose of the

statute so that taxpayers will not be burdened with some improvement which they do not want, cannot afford, or do not need. The statute contemplates a public hearing where the various objections made to the resolution of intention may be aired before actual work on the project has commenced.

In City of Lewistown v. Warr, supra [52 Mont. 353, 157 Pac. 954], the court referring to a resolution of intention said: "All proceedings which have for their ultimate object the subjection of property to the imposition of a tax are *in invitum*, and before property can be held subject to the burden, it must be described with sufficient certainty that the owner cannot be misled."

In the case of Shapard v. City of Missoula, supra, this court set down the four steps which must be taken before a special improvement district is born. They are: (1) the passage of the resolution of intention; (2) the publication of the required notice; (3) the hearing and determination of protests when any are filed by property owners whose property is to be assessed for the cost of the work and material necessary to be incurred; and (4) the ordering of the proposed improvement. The first three steps are jurisdictional. In the Shapard case at page 278 of 49 Mont., at page 547 of 141 Pac., the court also set down the following rule of construction regarding acts of. municipal corporations:

"The rule is well settled in this jurisdiction and by the decisions generally that a municipal corporation can exercise no powers except those which are granted in express words or those necessarily implied in or incident to the powers expressly granted, or those indispensable to the objects and purposes of the Corporation, and that any reasonable doubt as to the existence of a particular power is to be resolved against the corporation [citing cases] and that, when the mode of exercising any power is pointed out in the statute granting it, the mode thus prescribed must be pursued in all substantial particulars."

In the case of Evans v. City of Helena, supra, [60 Mont. 577, 199 Pac. 447], the court was faced with the problem of inter-

preting the meaning of the clause in the resolution of intention which should describe the general character of the improvement or improvements which are to be made. In that case they quoted approvingly from Mr. Justice Brantly's dissenting opinion in Mansur v. City of Polson, 45 Mont. 585, 596, 125 Pac. 1002:

" 'The term "character",' [as used in the statute] 'is perhaps the most general that could have been employed. Even so, it must be assigned such a meaning as will effectuate the purpose had in view, viz., that the improvement be so described by a statement of the dimensions, materials, etc., that the lot owner may determine whether he will acquiesce, and thus consent, or appear at the appointed time and seek to arrest further proceedings. He ought not to be compelled to suffer inconveniences incident to leaving his business to seek, and make inquiry of, members of the council or of the officer or officers who will have charge of the contemplated improvement. It is entirely possible that in a given case such inquiry would be futile, because definite information could not be obtained from any one of these officers. Indeed, this was the case here; for the record shows that the city engineer did not submit an estimate of the cost of the improvements or prepare plans and specifications until after the time for making objections had passed [by]'."

The court then went further and said:

"It is the established rule of law that the city council, in the resolution of intention, must describe the character and nature of the improvements, with sufficient particularity in order that the taxpayers affected may be fully advised, and the improvements to be made must correspond substantially with those set forth in the resolution of intention and no material change or departure therefrom can be made. [Citing cases.]

"Ordinarily the courts will not interfere with the judgment and discretion vested in the city council in the making of such street improvements, where it acts within jurisdiction and the resolution of intention and notice sufficiently describe the work and improvements contemplated; but where the improvements ʳʰout to be made are essentially different from those authorized

by the resolution, and the *cost* of the same is *materially increased,* the courts will interfere, although as regards the work to be done a substantial compliance with the resolution is all that is necessary.'' Emphasis supplied.

For a discussion of the requirement of notice after the resolution of intention see Wood v. City of Kalispell, 131 Mont. 390, 310 Pac. (2d) 1058. In that case this court held that lack of notice to *one landowner* was sufficient to divest the city council of jurisdiction to proceed with the special improvement district.

The authorities cited above graphically illustrate one proposition: The landowner whose property is affected by the special improvement district must be given notice of the intention of the city's intent to create one. This notice must be sufficiently definite to apprise the landowner of the extent, nature and cost of the various improvements proposed.

What then is the purpose of requiring that an estimated cost of the improvements be made in the resolution of intention and contained in the notice to the property owners? There is only one conclusion which could be arrived at in answering this question. The purpose of the estimate is to notify the property owner that the improvements will cost a certain amount of money. In turn the taxpayer is then notified that if the improvement district is created, his property will be assessed its allocable portion of the total cost of the improvements. If the estimate should bear no reasonable relation to the actual cost of the improvements without giving any subsequent notice of intention to revise, then the whole purpose and intent of that portion of section 11-2204 which requires that an estimate of the cost be contained in the resolution of intention is lost. While a taxpayer may not come forward to object to an improvement which costs only the estimated amount, he might vehemently object to one which costs considerably more than that estimate. If a liberal construction be given to the words ''approximate estimate'' he has lost his opportunity to object to the revision, because notice and time for hearing has already

passed and in essence he is given *no* notice of the actual cost of the improvements or any *real* opportunity to object.

A liberal interpretation of the words ''approximate estimate'' would pave the way for much abuse and the resulting litigation in which abuse of any statutory authority results. If a liberal construction be given then, overzealous councils could impose a much greater burden on the inhabitants of a city or town than was contemplated by the statute in question. The purpose of the statute was to give each and every landowner affected an opportunity to be heard and object to the proposed improvements. A liberal construction could open the door to fraud and corruption in cities by affording city officials the opportunity of increasing the estimate above that approved. Another abuse which could result is that contractors in submitting bids for the special improvement districts need not attempt to keep those bids within the estimate provided for in the resolution of intention, for if the council could raise the estimate without notice to the taxpayer then they are free to accept bids in excess of the estimate provided for.

Several other states provide that an estimated cost of the improvement be contained in the notice of intention to make the improvements. The great majority of those cases allowing assessment and levy of taxes in excess of the estimate provided for in the notice were ones in which the contracts had already been entered into and the improvements already completed. Kelley v. Morton, 179 Mo. App. 296, 299, 166 S.W. 840; Sheridan v. Fleming, 93 Mo. 321, 325, 5 S.W. 813; State v. Town of Guttenberg, 38 N.J.L. 419; Miller v. City of Glenwood, 188 Iowa 514, 176 N.W. 373; Miller v. City of Portland, 62 Or. 26, 123 Pac. 64; Vincent v. City of South Bend, 83 Wash, 314, 145 Pac. 452; Branting v. Salt Lake City, 47 Utah 296, 153 Pac. 995; McChesney v. City of Chicago, 188 Ill. 423, 58 N.E. 982; Hill v. Swingley, 159 Mo. 45, 60 S.W. 114, which of course is not the instant case.

Numerous cases appear wherein the courts state the reason for the estimate is to apprise the taxpayer of the proposed cost

of improvements and the expected return to them. They indicate that if an estimate be given too liberal a construction then that estimate might have no relation at all to the actual cost, thus in a sense giving the taxpayer no notice. Smith v. City of Parkersburg, 125 W. Va. 415, 24 S.E. (2d) 588; Lucas v. City of Nampa, 41 Idaho 35, 238 Pac. 288; Kutchin v. Engelbret, 129 Cal. 635, 62 Pac. 214; City of Chicago v. Terwilliger, 253 Ill. 395, 97 N.E. 694.

In Payne v. Village of South Springfield, 161 Ill. 285, 44 N.E. 105, 108, the court made the following observation:

"If commissioners to levy a special tax can levy $318 more than the estimated amount required, they may levy any other sum in excess of that estimate without invalidating their action. We are unable to find any authority or reason in support of the position that the commissioners appointed by the county court to levy the special tax can ignore the cost of the improvement as fixed by the ordinance and the committee appointed to make the estimate."

One of the few cases found where the court has allowed the increase in the estimate before construction and after notice is Auditor General v. Chase, 132 Mich. 630, 94 N.W. 178. In that case the original estimate was $40,000, the increase was to $70,000. The court in effect allowed an increase of the original estimate by seventy-five percent. This result is wholly alien to the fundamental purpose of our statute requiring that notice be given the property owner. If the estimate could be raised by this percentage there would be no purpose in giving the property owners any notice at all. Although the character of the improvements and the description of the property to be affected would still be contained in the notice, the most vital, at least to most taxpayers, portion of the notice would be lacking, viz., how much is it going to cost?

Examining the instant case in the light of the foregoing discussion we find that the original estimate was increased by 7½ percent or $16,000. If this court were to say that this increase was not a substantial one, or a material deviation from

the resolution of intention then we would presumably be setting a precedent for allowing future city councils to increase their estimates by 7½ percent. This court will not cultivate such a fruitful ground for future litigation and abuse. While in a particular case an increase in the estimate, as contained in the resolution of intention, may be warranted and upheld by this court, the facts would necessarily have to be substantially different from those in the present one; and in no case will 7½ percent fall within the purview of "approximate estimate."

In the present case the city council increased the estimate in the resolution of intention and the notice given to the property owners affected thereby. No notice was given of the increase and the bid of Helena Sand and Gravel was accepted for $199,-674.97. Since there are many landowners who might have objected to the increased estimate we hold that the notice of the resolution of intention given by the city to the landowners was not sufficient in that it did not contain an "approximate estimate" of the cost of the improvements and therefore the bid as let by the city council materially and substantially differed from that one inferentially approved (that is by lack of sufficient objection) by the persons affected.

The judgment of the trial court is reversed.

MR. JUSTICES BOTTOMLY and ADAIR, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

I think the trial court was right in denying injunctive relief to plaintiff and in entering the judgment which it did.

There was full compliance with the statute requiring an approximate estimate of the cost of the improvements and in giving the notice stating the estimated cost thereof.

The notice in legal effect stated to the property owners the estimated cost of the improvements is $212,000, but the actual cost may be somewhat more or somewhat less than the estimate.

The property owner then was given ample notice to constitute due process of law. He was called upon to either protest

or accept the improvements on the supposition that the estimated cost was $212,000, but that the actual cost may be either more or less than the estimate. Compare City of Greensboro v. Southern Pav. & Const. Co., 4 Cir., 168 F. 880. It does not follow that there can be compliance with the statute if the estimated cost was not made in good faith. In other words there must be good faith and honest belief that the estimated cost would not be exceeded materially. Here there is no evidence of a lack of good faith. Labor or costs of material may have changed between February 1957 when the estimate was made and the time bids were received.

The statute on its face shows that the legislature did not intend to hold the city to a definite sum as to the cost of the improvements. That is why it used the term ''approximate estimate.'' Likewise it is made plain by R.C.M. 1947, section 11-2225, that the property owners cannot rely on the estimated cost as being the final figure on which assessments may be made.

Under that section the property owners may be subjected to assessment to pay damages awarded to any property owner.

Had the legislature intended that the actual cost could not exceed the approximate estimate it could easily have said so.

I do not agree that this result would establish a dangerous precedent, but if so the legislature may change the law as it sees fit at any time.

In fact the precedent has already been established. In Mansur v. City of Polson, 45 Mont. 585, 125 Pac. 1002, the estimated cost of improvements was $10,000 whereas the actual cost was in the neighborhood of $14,000, an increase of about forty percent. This appears from the argument of counsel appearing on page 589 of volume 45 of the Montana Reports. This court upheld the proceedings.

As the statute is now written I think the judgment of the trial court was in conformity therewith and should be affirmed.

MR. JUSTICE CASTLES, deems himself disqualified and takes no part in the determination of this appeal.